## LINDA HOPKINS *vs.* LIBERTY MUTUAL INSURANCE COMPANY.

Berkshire. May 10, 2001. - July 12, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Insurance,* Unfair act or practice, Settlement of claim. *Consumer Protection Act,* Insurance, Availability of remedy, Unfair act or practice, Damages, Attorney's fees. *Damages,* Attorney's fees, Consumer protection case.

This court concluded that a claim against an insurer for unfair settlement practices, arising from an ongoing, but single, act, can constitute an actionable violation of G. L. c. 176D, § 3 (9) (*f*), and G. L. c. 93A, §§ 2 and 9. [561-563]

A violation of G. L. c. 176D, § 3 (9) (*f*), which prohibits an insurer from failing to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear, can be the basis under G. L. c. 93A, § 9 (3) and (4), for an award of multiple damages and attorney's fees and costs. [563-565]

In a action brought under G. L. c. 176D, § 3 (9) (*f*), against an insurer for unfair settlement practices, in which the parties eventually settled, the trial judge correctly concluded that the plaintiff met her burden of proving that the defendant's unlawful conduct caused her to sustain damages (i.e., the interest on the loss of use of money that should have been, but was not, offered in accordance with G. L. c. 176D, § 3 [9] [*f*], and that was in fact included in the sum finally paid to the plaintiff by the insurer), and the plaintiff was not required to show that she would have accepted a hypothetical settlement offer, had one been forthcoming [565-569]; further, the judge's decision to multiply the actual damages because of the defendant's wrongdoing was fully supported [569].

CIVIL ACTION commenced in the Superior Court Department on February 2, 1995.

The case was heard by *Constance M. Sweeney,* J., and a motion to alter or amend the judgment was considered by her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Chris S. Dodig & James R. Loughman* for the defendant.

*David R. Cianflone* for the plaintiff.

GREANEY, J. After a jury-waived trial, a judge in the Superior

Court concluded that the defendant, Liberty Mutual Insurance Company, had committed knowing and wilful violations of G. L. c. 176D, § 3 (9) (*f*), and G. L. c. 93A, §§ 2 and 9, by acting unfairly and deceptively in settling a claim for personal injuries brought by the plaintiff, Linda Hopkins. The plaintiff's claim was eventually settled by the defendant on October 15, 1996, in a structured settlement with a value of $400,000. To compensate the plaintiff for the defendant's violations of G. L. c. 93A, the judge awarded the plaintiff damages of $251,199 (actual damages of $83,733 and punitive damages of $167,466), together with attorney's fees ($7,035) and costs ($455.34). The defendant appealed, and we transferred the appeal to this court on our own motion. We reject the defendant's claims that G. L. c. 176D, § 3 (9) (*f*) (making it an unfair claim settlement practice if an insurer "fail[s] to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"): (1) does not permit a recovery for a single act or claim that constitutes an actionable violation; and (2) cannot be the basis for an award of multiple damages and attorney's fees and costs under G. L. c. 93A, § 9. We also conclude that the judge was warranted in finding that the defendant's violation of G. L. c. 176D, § 3 (9) (*f*), injured the plaintiff, and that the judge's assessment of damages should stand. We, therefore, affirm the judgment and grant the plaintiff's request that she recover her attorney's fees and costs on this appeal.

The judge's memorandum of decision provides the following background. On February 7, 1992, the plaintiff was seriously injured in a five-vehicle accident in Pittsfield. The plaintiff was operating her automobile behind a vehicle driven by Arthur A. Peterson. Behind the plaintiff was an automobile driven by Robert M. Whipple. The first impact occurred when the Whipple vehicle struck the rear of the plaintiff's vehicle, pushing her automobile into the rear of the Peterson vehicle. The second impact occurred when a truck behind the Whipple vehicle, owned by Tire Centers, Inc. (TCI), and driven by its employee, Robert Jones, struck the Whipple vehicle, which then collided, a second time, with the plaintiff's vehicle. The TCI truck was in turn struck by a vehicle operated by Cohlin Drake, causing a

third impact between the Whipple vehicle and the plaintiff's automobile. Because the accident occurred on a straight road and on a sunny and dry day, it was readily apparent to the police officer who investigated the accident, and to the various insurers' representatives, that the accident was caused by the failure of Whipple, Jones, and Drake to allow sufficient distance between their own vehicles and the vehicles preceding them.

TCI's truck was insured by the defendant under a commercial automobile liability policy, in the amount of $1,000,000, and under a separate excess liability policy, for an additional $5,000,000.[1]

At the time of the accident, the plaintiff, age thirty-five, was a licensed master plumber, earning approximately $32,000 a year. After the accident, the plaintiff experienced pain and numbness in her neck and inner scapular, and pain in her left buttock and lower back. The plaintiff was eventually diagnosed as suffering from a herniated cervical disc with a corresponding radiculopathy, causing a loss of function in her upper right arm. Her physician also determined that the spinal injury she suffered in the accident aggravated a preexisting medical condition.[2] Despite undergoing corrective surgery in January, 1994, and despite her attempts at physical rehabilitation and job retraining, the plaintiff remains unable to work and will never be able to work as a plumber.

Shortly after the accident, the defendant, who was aware that the plaintiff was represented by counsel, began an investigation into the accident and the extent of the plaintiff's injuries. The defendant's own records from February, 1992, until October, 1994, reveal that it was fully aware of TCI's and Jones's legal responsibility in causing the accident as early as August 1992. During this time, the plaintiff's medical situation remained unresolved, but the defendant was continuously provided with

---

[1]Drake's vehicle also had insurance coverage with the defendant, in a policy with a limit of $20,000, and Whipple's vehicle was insured by Quincy Mutual Insurance Company in the amount of $50,000.

[2]A few years before the accident, the plaintiff had been treated for a medical condition known as spondylolisthesis, which had caused her to experience a modest loss of function, as well as some numbness and discomfort, in her right leg. The judge found that this condition, however, had not, up until the time of the accident, interfered with her ability to work in her trade.

her medical and surgical bills and reports, and was aware of the extent of her injuries. In October, 1994, the defendant's reserve on the plaintiff's claim was set at $75,000. Later that month, the defendant's adjuster responsible for the plaintiff's claim recommended that the reserve be raised to $250,000.

On October 14, 1994, the plaintiff sent the defendant a settlement demand letter, requesting the amount of $700,000.[3] When an offer was not forthcoming, on December 29, 1994, the plaintiff sent a G. L. c. 93A demand letter to the defendant. On January 28, 1995, the defendant responded to the plaintiff's G. L. c. 93A demand letter. In that response, the defendant made no offer of settlement, but indicated that, in its opinion, liability was not clear because of the chain reaction nature of the collision, and that more medical and employment records were required before the plaintiff's claim could be evaluated properly.

Five days later, the plaintiff filed a complaint in the Superior Court alleging negligence against TCI and Jones, seeking damages for the injuries she sustained in the accident.[4] Her complaint also alleged that the defendant had violated both G. L. c. 176D, § 3 (9), and G. L. c. 93A, §§ 2 and 9, and sought damages and attorney's fees and costs under G. L. c. 93A.

The attorney hired by the defendant to represent TCI and Jones pursued an aggressive inquiry into their potential defenses, which included deposing the various parties, reviewing police reports, obtaining the plaintiff's medical and employment records, and arranging for surveillance to be conducted on the plaintiff to determine the extent of her claimed incapacity. The attorney's efforts confirmed that the liability of TCI and Jones was clear and that the plaintiff's damages were reasonably established. By June, 1995, the defendant had raised its reserves to $400,000.

On April 24, 1996, the defendant extended to the plaintiff its first settlement offer, on behalf of TCI and Jones, for a combined

---

[3]The plaintiff's demand was based on medical bills of approximately $51,000, loss of bodily function, surgical scarring, and loss of income to that date of $90,000, and future loss of earning capacity, estimated at $775,000.

[4]The plaintiff's complaint also alleged negligence against Whipple and Drake, who subsequently settled with the plaintiff for the full amount of their insurance policies in exchange for a release of her claims against them.

settlement of $400,000. The offer was contingent on the parties arriving at a structured settlement based on the $400,000 and executing releases to TCI and Jones for the plaintiff's negligence claims and to the defendant for the G. L. c. 176D and G. L. c. 93A claims. The plaintiff rejected the defendant's offer.

On August 21, 1996, TCI and Jones made the plaintiff an offer, pursuant to Mass. R. Civ. P. 68, 365 Mass. 835 (1974), in the amount of $400,000.[5] The offer was conditioned on the plaintiff's executing a full release of her claims against TCI and Jones, but provided that her claims against the defendant would survive the settlement. A tentative agreement was reached in September, and, after the details of the structured settlement were negotiated, an appropriate judgment was entered on October 15, 1996.

Following a jury-waived trial on the plaintiff's allegations of an unfair settlement practice on the part of the defendant, the judge determined that, by late 1994, TCI's and Jones's liability was clear and the plaintiff's damages were reasonably established. The judge concluded that the defendant had violated G. L. c. 176D, § 3 (9) (*f*), by failing to tender a fair offer of settlement to the plaintiff within a reasonable time after receiving the plaintiff's October, 1994, settlement demand of $700,000.

The judge determined the plaintiff's damages to be the loss incurred as a result of the defendant's unfair and deceptive settlement practice, and calculated the amount of damages as the interest on the settlement amount of $400,000, from the date at which the defendant was required under G. L. c. 93A, § 9, to make a reasonable settlement offer (January 26, 1995, or thirty days after receiving the plaintiff's c. 93A demand letter)[6] until the date the settlement was actually consummated (October 15, 1996). She then awarded the plaintiff reasonable attorney's fees

---

[5]Although not included in the judge's findings, an earlier offer of a structured settlement, in the amount of $400,000, was extended to the plaintiff on June 27, 1996. The record indicates that this offer was not contingent on the plaintiff's execution of a release of her G. L. c. 176D and c. 93A claims, but does not allow any inference as to its terms, or the nature of the plaintiff's response to this offer.

[6]The judge determined that January 26, 1995, was the thirtieth day by which the defendant could have responded to the plaintiff's G. L. c. 93A

and costs incurred in pursuing her G. L. c. 93A action against the defendant. The judge also found that the defendant deliberately refused to make any offer of settlement until April 1996, despite knowing in 1992 that its insureds were at fault, and knowing in late 1994 the extent of the plaintiff's damages. Based on that finding, the judge concluded that the defendant's conduct required multiplication of actual damages.

On appeal, the defendant claims that it is entitled to judgment because (1) a single act may not be an actionable violation of G. L. c. 176D, § 3 (9) (*f*); (2) a violation of G. L. c. 176D, § 3 (9) (*f*), cannot constitute the basis for an award of multiple damages and attorney's fees and costs; and (3) the plaintiff failed to satisfy her burden of proving that the defendant's conduct caused her to sustain actual damages or, alternatively, that the defendant's conduct caused the plaintiff actual damages up until October 15, 1996.[7] We consider each of these claims in turn.

1. General Laws c. 176D, § 3 (9) (*f*), prohibits an insurer from "[f]ailing to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." The defendant focuses on the plural words in the statute ("settlements of claims"), and the fact that this court and the Appeals Court have reserved the question whether a single act or claim can constitute a violation of the statute,[8] to argue that the plaintiff cannot recover because her claim did not involve a pattern of wrongful conduct on its part. The defendant refers to other portions of G. L. c. 176D, § 3, where, in describing a

demand letter with a reasonable offer of settlement. As the defendant points out, however, this date should have been set at January 28.

[7]Prior to its appeal, the defendant filed a motion to alter or amend the judgment, based on grounds identical to those now asserted. The defendant's appeal incorporates a claim that the judge improperly denied its motion.

[8]In *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 676 (1983), this court noted that the language of § 3 (9) (*f*) "refers to multiple . . . failures, not to a single act. It may be that a person whose rights were adversely affected by an insurance company's violation of § 3 (9) . . . (*f*) must be affected by a pattern of unfair claim settlement practices and not by an isolated act." (Footnote omitted.) To similar effect is language in *Swanson* v. *Bankers Life Co.*, 389 Mass. 345, 349 n.5 (1983); *Demeo* v. *State Farm Mut. Auto. Ins. Co.*, 38 Mass. App. Ct. 955, 956 n.3 (1995); *Trempe* v. *Aetna Cas. & Sur. Co.*, 20 Mass. App. Ct. 448, 456-457 (1985).

statutory violation, a claim is defined in the singular,[9] and draws the conclusion that the Legislature did not intend a recovery in a case such as this where the plaintiff's claim arises from a single act.

We do not consider that G. L. c. 176D, § 3 (statute), is within that class of statutes where the Legislature's choice of the singular or plural in various subsections is meant to differentiate between a single act and multiple acts. The statute, which is consumer oriented, was designed to remedy a host of possible violations in the insurance industry and to subject insurers committing violations to the remedies available to an injured party under G. L. c. 93A. Section 3 (9) (*f*) of the statute, in particular, is meant to deal with the conduct of some insurers that stymied those with bona fide claims from obtaining fair settlements in a reasonably prompt time. It makes no sense, for example, to interpret § 3 (9) (*n*) (which uses the word "claim") to hold that a plaintiff would have a valid basis for recovery if an insurer failed to provide a reasonable explanation for denying a single claim, but to hold that the same plaintiff could not recover under § 3 (9) (*f*), if the insurer, after reconsidering its denial, and concluding that the claim had merit, persisted in refusing to effectuate a fair and equitable settlement. See G. L. c. 4, § 6, Fourth ("Words importing the singular number may extend and be applied to several persons or things, words importing the plural number may include the singular . . ."). 

Further considerations support this impression. If the defendant's view of the statute is accepted, a plaintiff, such as the plaintiff here, must either attempt to divide her single claim into a series of discrete acts in order to recover or bring a G. L. c. 93A action against a defendant, alleging that its acts and practices in the handling of her claim might be replicated in the defendant's handling of other claims, so that a pattern of action-

---

[9]See, e.g., G. L. c. 176D, § 3 (9) (*h*), which prohibits an insurer from "[a]ttempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application," and § 3 (9) (*n*), which makes unlawful an insurer's "[f]ail[ure] to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."

able misconduct exists. The former approach (division of the claim into allegedly separate parts) would produce unnecessary litigation, and, perhaps, transgress the general rule that a continuing breach of a statutory duty is usually considered a single violation of the statute and not a series of separate violations. See, e.g., *Darmetko* v. *Boston Hous. Auth.*, 378 Mass. 758, 761-762 (1979). The latter approach (searching for a pattern of violations contained in the claim files of other insureds) would trigger, in many instances, lawsuits likely to lead to contentious discovery requests, resort to class action motions under Mass. R. Civ. P. 23, 365 Mass. 767 (1974), and G. L. c. 93A, § 9 (2), and other litigation procedures that often occur in so-called complex cases.

The Legislature could not have intended these consequences when it attempted to bring a semblance of fairness and order to an area that needed regulation. We conclude that a claim such as the plaintiff's, comprising an ongoing, but single, violation, can be actionable under G. L. c. 176D, § 3 (9) (*f*), and G. L. c. 93A, §§ 2 and 9.[10]

2. We reject the defendant's argument that a violation of G. L. c. 176D, § 3 (9) (*f*), cannot be the basis under G. L. c. 93A, § 9 (3) and (4), for an award of multiple damages and attorney's fees and costs. The defendant asserts that the plain language of G. L. c. 93A, § 9 (3) and (4), allowing for multiple damages "if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated section two," limits recovery of multiple damages and attorney's fees and costs to violations of G. L. c. 93A, § 2, but omits mention of violations

---

[10]As the plaintiff points out, there are decisions where a claim under G. L. c. 176D, § 3 (9) (*f*), has been made out even though it is a single claim. See *Clegg* v. *Butler*, 424 Mass. 413 (1997); *Metropolitan Prop. & Cas. Ins. Co.* v. *Choukas*, 47 Mass. App. Ct. 196 (1999). The issue discussed here may not have been raised in those cases, but the appellate courts deciding them did not pause to take up the question reserved some time ago in *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, *supra* at 676, and other decisions, see note 8, *supra*, despite reference in those cases to *Van Dyke* when discussing liability under G. L. c. 176D, § 3 (9) (*f*). See *Clegg* v. *Butler*, *supra* at 418; *Metropolitan Prop. & Cas. Ins. Co.* v. *Choukas*, *supra* at 197 n.1.

of G. L. c. 176D, § 3. The defendant, apparently, would have us conclude that, because the plaintiff's claim is premised on the defendant's violation of G. L. c. 176D, § 3 (9) (*f*), there has been no violation of G. L. c. 93A, § 2, and so multiple damages and attorney's fees and costs cannot be awarded.[11]

The defendant's argument mischaracterizes the relationship between the two statutes. The key provision of G. L. c. 93A, found in § 2 (*a*) of the statute, states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." General Laws c. 176D, § 3, prohibits "unfair or deceptive acts or practices in the business of insurance," and § 3 (9) enumerates acts and omissions that constitute unfair claim settlement practices. The former statute incorporates the latter, and an insurer that has violated G. L. c. 176D, § 3 (9) (*f*), by failing "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear," by definition, has violated the prohibition in G. L. c. 93A, § 2, against the commission of unfair or deceptive acts or practices. See *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 77-79 (1977); *Noyes* v. *Quincy Mut. Fire Ins. Co.*, 7 Mass. App Ct. 723, 726-727 (1979). See also *Lazaris* v. *Metropolitan Prop. & Cas. Ins. Co.*, 428 Mass. 502, 502 (1998). A private consumer (and other legal entities that do not qualify as business plaintiffs under § 11), who has been "injured by another person's use or employment of any method, act or practice declared to be unlawful by section two . . . or . . . whose rights are affected by another person violating the provisions of [G. L. c. 176D, § 3 (9),]" may recover damages under G. L. c. 93A, § 9, for injuries arising out of the unlawful conduct. Such has been the application of G. L. c. 93A, §§ 2 and 9, and G. L. c. 176D, § 3

___

[11]This somewhat creative argument differs from the argument the defendant set forth in its opening statements at trial, or in its proposed rulings of law submitted to the judge after trial, which was that the plaintiff was not entitled to multiple damages under G. L. c. 93A, §§ 2 and 9, and G. L. c. 176D, § 3 (9), because its failure to effectuate a settlement had not been wilful or in bad faith. It might be possible to dispose of the defendant's current argument on the basis that it was not adequately raised or argued in the Superior Court. We shall give the defendant the benefit of the doubt here, because the issue is an important one and the record permits it to be decided favorably to the prevailing party.

(9), in numerous appellate decisions. See *Kapp* v. *Arbella Mut. Ins. Co.*, 426 Mass. 683 (1998); *Clegg* v. *Butler*, 424 Mass. 413 (1997); *Bonofiglio* v. *Commercial Union Ins. Co.*, 411 Mass. 31 (1991), *S.C.*, 412 Mass. 612 (1992); *Bertassi* v. *Allstate Ins. Co.*, 402 Mass. 366 (1988); *Yeagle* v. *Aetna Cas. & Sur. Co.*, 42 Mass. App. Ct. 650 (1997); *Cohen* v. *Liberty Mut. Ins. Co.*, 41 Mass. App. Ct. 748 (1996); *Wallace* v. *American Mfrs. Mut. Ins. Co.*, 22 Mass. App. Ct. 938 (1986); *Equitable Life Assur. Soc'y* v. *Porter-Englehart*, 867 F.2d 79 (1st Cir. 1989). See also *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. 747, 754 (1993) ("[a] consumer asserting a claim under G. L. c. 93A, § 9, may recover for violations of G. L. c. 176D, § 3 [9], without regard to whether the violation was unlawful under G. L. c. 93A, § 2, because of the explicit statement to that effect in § 9"); M.C. Gilleran, The Law of Chapter 93A § 9:28, at 296 (1989 & Supp. 1999) ("A violation of [G. L.] c. 176D . . . is also expressly a violation of [G. L. c. 93A,] § 9").[12]

3. The defendant argues that the judge erred in concluding that the plaintiff met her burden of proving that its unlawful conduct caused her to sustain any damages. The defendant points to the absence of any testimony or evidence from the plaintiff that she would have accepted an offer of $400,000 in January, 1995, combined with her rejection of subsequent offers

---

[12]General Laws c. 93A, § 9 (1) and (2), was rewritten by St. 1979, c. 406, § 1, apparently to address that part of the decision of this court in *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 81-82 (1977), which held that claimants in personal injury and property damage actions, who were not insureds, could not invoke G. L. c. 93A, § 9, to seek redress against insurers for violations of G. L. c. 176D, § 3 (9). The amendment rewrote G. L. c. 93A, § 9 (1), to provide that "[a]ny person [other than a G. L. c. 93A, § 11, claimant] . . . whose rights are affected by another person violating the provisions of [G. L. c. 176D, § 3 (9)]," may bring an action under G. L. c. 93A to obtain relief. The amendment thus did away with the restrictive interpretation given the interconnection between G. L. c. 176D, § 3 (9), and G. L. c. 93A by the *Dodd* decision. The effect of the amendment was to broaden the class of persons who could bring private causes of action for unfair insurance claim settlement practices, beyond purchasers of insurance. The language added by the amendment, however, did not affect the substantive rights of claimants, such as the plaintiff, asserting violations of both G. L. c. 176D, § 3 (9), and G. L. c. 93A, §§ 2 and 9. The interpretation given to the text of G. L. c. 93A, § 9 (1), (3), and (4), by the defendant, is wholly inconsistent with the purpose of the amendment and the text of those provisions considered as an integrated whole.

in the same amount. These events, the defendant argues, demonstrate that there is "no causal nexus between [the defendant's] failure to make the $400,000 offer in January of 1995 and any interest which may have been lost as a result of that failure." The defendant concludes that, "[w]ithout such a nexus, [the plaintiff] may only recover (at most) nominal damages."[13] We disagree.

General Laws c. 176D, § 3 (9) (*f*), and G. L. c. 93A, § 9, together require an insurer such as the defendant promptly to put a fair and reasonable offer on the table when liability and damages become clear, either within the thirty-day period set forth in G. L. c. 93A, § 9 (3), or as soon thereafter as liability and damages make themselves apparent. The defendant concedes on appeal that its failure to effectuate a prompt and fair settlement of the plaintiff's claim violated G. L. c. 176D, § 3 (9) (*f*).[14] The defendant's violation caused injury to the plaintiff, see *Leardi* v. *Brown*, 394 Mass. 151, 159 (1985), quoting Restatement (Second) of Torts § 7 (1965) (injury in context of consumer protection legislation, such as G. L. c. 93A, is the "invasion of any legally protected interest of another"), and, under G. L. c. 93A, § 9, the plaintiff is "entitled to recover for all losses which were the foreseeable consequences of the

---

[13]Alternatively, the defendant argues that the plaintiff's damages should be reduced, because the record shows that, see note 5, *supra*, in June, 1996, the plaintiff was offered, and (according to the defendant) refused, a virtually identical settlement offer to the one ultimately accepted. To calculate damages on the time period from June until October, according to the defendant, would be to punish the defendant for the plaintiff's refusal to accept its settlement offer when it was first made in June. The defendant's failure to raise this argument in its written closing arguments or its proposed rulings of law submitted to the judge, as well as its failure to include even a passing reference to the June settlement offer in its proposed findings of fact, bars the defendant from asserting this argument on appeal. See *Wynn & Wynn, P.C.* v. *Massachusetts Comm'n Against Discrimination*, 431 Mass. 655, 674-675 (2000). We choose not to grant the defendant any relief from the bar.

[14]This concession is well warranted. During more than two and one-half years, from the February, 1992, accident to the plaintiff's October, 1994, demand letter, the defendant was kept fully updated on the plaintiff's ongoing medical treatment, and the defendant had ample opportunity to investigate the circumstances of the motor vehicle accident and to assess its insureds' liability. Yet the defendant made no offer of settlement until April, 1996, more than four years after the accident.

defendant's unfair or deceptive act or practice." *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 101 (1983).

We reject the defendant's contention that the plaintiff has not shown that she was adversely affected or injured by its conduct. The defendant's deliberate failure to take steps, as required by law, to effectuate a prompt and fair settlement in January, 1995, when the liability of its insureds was clear, forced the plaintiff to institute litigation, and, in so doing, to incur the inevitable "costs and frustrations that are encountered when litigation must be instituted and no settlement is reached." *Clegg* v. *Butler*, 424 Mass. 413, 419 (1997). An insurer's statutory duty to make a prompt and fair settlement offer does not depend on the willingness of a claimant to accept such an offer. See *Metropolitan Prop. & Cas. Ins. Co.* v. *Choukas*, 47 Mass. App. Ct. 196, 200 (1999). Accordingly, quantifying the damages for the injury incurred by the plaintiff as a result of the defendant's failure under G. L. c. 176D, § 3 (9) (*f*), does not turn on whether the plaintiff can show that she would have taken advantage of an earlier settlement opportunity.[15] The so-called causation factor entitles a plaintiff, like the plaintiff here, to recover interest on the loss of use of money that should have been, but was not, offered in accordance with G. L. c. 176D, § 3 (9) (*f*), if that sum is in fact included in the sum finally paid to the plaintiff by the insurer.[16] It is this amount of money that has been wrongfully withheld from the plaintiff, and it is this sum on which the defendant must pay interest to remedy its wrongdoing. "This is precisely the type of damage we have described as appropriate[ ] . . . in an action . . . under [G. L.] c. 93A." *Clegg* v. *Butler, supra*, quoting *Schwartz* v. *Rose*, 418 Mass. 41, 48 (1994).[17]

"The statutes at issue were enacted to encourage settlement

---

[15]In fact, from October, 1994, until the time of trial approached, the plaintiff made demands of $700,000; $1,000,000; $1,300,000; and $500,000.

[16]We need not decide in this case whether the same measure of damages would apply in a case where an insurer, having initially violated G. L. c. 176D, § 3 (9) (*f*), and G. L. c. 93A, §§ 2 and 9, thereafter makes a fair and reasonable (but nevertheless tardy) offer of settlement, which is refused by a claimant.

[17]None of the appellate decisions cited by the defendant support its claim that the plaintiff has failed to show actual damages caused by its unlawful conduct. Some merely state the obvious rule that, in order to recover actual

of insurance claims . . . and discourage insurers from forcing claimants into unnecessary litigation to obtain relief" (citation omitted). *Clegg* v. *Butler, supra.* An insurer should not be permitted to benefit from its own bad faith, where, as occurred here, it violated G. L. c. 176D, § 3 (9) (*f*), by intentionally failing to make a prompt, fair offer of settlement. The defendant could have avoided the imposition of damages by making a prompt and fair offer of settlement that complied with G. L. c. 176D, § 3 (9) (*f*),[18] within thirty days of receiving the plaintiff's G. L. c. 93A demand letter, as provided by G. L. c. 93A, § 9 (3) ("[a]ny person receiving [a written demand for relief] who, within thirty days . . . makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner"). Had such an offer been made, and rejected by the plaintiff, the burden would have been on the defendant to prove

damages under G. L. c. 93A, § 9, there must be a causal relationship between the alleged unfair act and the claimed loss. See *Massachusetts Farm Bur. Fed'n, Inc.* v. *Blue Cross of Mass., Inc.,* 403 Mass. 722, 730 (1989); *Kohl* v. *Silver Lake Motors, Inc.,* 369 Mass. 795, 800-801 (1976); *Cohen* v. *Liberty Mut. Ins. Co.,* 41 Mass. App. Ct. 748, 754 (1996). Others were decided on factual circumstances not present here. See *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.,* 388 Mass. 671, 678 (1983) (plaintiffs not adversely affected by insurer's alleged violation of G. L. c. 176D, § 3 [9] [*d*], because, even had proper investigation been conducted, insurer would have discovered liability was not reasonably clear, and thus would have been warranted in rejecting plaintiffs' demand); *Pandey* v. *Paul Revere Ins. Co.,* 34 Mass App. Ct. 919, 920 (1993) (insured denied legal fees and expenses when he brought action against disability insurer, because his affidavit was "barren of facts which could reasonably be interpreted to support" conclusion that insurer had violated G. L. c. 176D, § 3 [9] [*f*]); *Chub* v. *Electric Ins. Co.,* 17 Mass. App. Ct. 61, 62-63 (1983) (summary judgment for insurer appropriate, when plaintiff had recovered settlement from second [tortfeasor's] insurer, and thus had failed to show injury from own insurer's alleged violation of G. L. c. 176D, § 3 [9] [*f*]).

[18]The question whether such an offer has been made would be one of fact to be resolved by a trial judge, if there is litigation over the matter. Thus, an insurance company that acts properly has a way to satisfy its obligations to claimants (and its insured) and to limit its possible liability under G. L. c. 93A.

that the offer was reasonable. See *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 799 (1976). In circumstances such as this, when the defendant failed to make any offer at all, the plaintiff should not be required to show that she would have accepted a hypothetical settlement offer, had one been forthcoming. See *Metropolitan Prop. & Cas. Ins. Co.* v. *Choukas, supra* at 200. We considered a similar argument when deciding the *Clegg* case and rejected it. See *Clegg* v. *Butler, supra* at 428-429 (O'Connor, J., dissenting) (arguing that actual damages had not been proved, because, even though primary insurer [defendant] had unlawfully failed to offer prompt and fair settlement, plaintiffs had not shown that excess insurer subsequently would have made offer that was acceptable to them). Finally, the judge's decision to multiply the actual damages because of the defendant's wrongdoing is fully supported.

4. The plaintiff may apply to a single justice of this court for an award of appropriate attorney's fees and costs in connection with this appeal. See *Bonofiglio* v. *Commercial Union Ins. Co.*, 412 Mass. 612, 613 (1992).

*Judgment affirmed.*