Troy, Paul E., J.
Introduction
Plaintiff, George Bithoney (plaintiff or Bithoney), has brought this action pursuant to Massachusetts General Laws Chapter 176D and Chapter 93A (G.L.c. 176D) against the defendant, Pilgrim Insurance Company (Pilgrim) alleging unfair insurance settlement practices. The law suit is based upon Pilgrim’s settlement practices after a motor vehicle accident between plaintiff and Pilgrim’s insured. A juiy-waived trial was held before this court on September 9, 2005, September 12, 2005 and September 26, 2005. Based upon the credible evidence introduced at trial, and the reasonable inferences drawn from that evidence, the court finds as follows.
Discussion and Findings
On July 26, 1997, at approximately 2:30 p.m., Bithoney was involved in a motor vehicle accident with Ricardo Henry (Hemy). The accident occurred at the intersection of Dodge and Leighton Streets in Hyde Park, Massachusetts. Bithoney pulled approximately three feet into the intersection so he could see. At that time, Henry’s vehicle came down the middle of Dodge Street and struck Bithoney’s vehicle on its right front fender. The impact lifted Bithoney’s vehicle off the ground and moved it some four to five feet.
At the time of the accident, Henry was operating a limousine as an employee of T&L Limousine Service, Inc. and Automotive Management Group, Inc. Pilgrim was the insurer of Henry’s vehicle.
Bithoney had three passengers in his vehicle at the time of the accident: his wife, Bernice Bithoney, and his two sons, Mark Bithoney and Michael Bithoney. Bithoney, along with his wife and sons, were injured in the accident. Following the collision, Bithoney was taken by ambulance to the Carney Hospital in Dorchester, Massachusetts, where he received emergency medical treatment and was released. Bithoney did not miss work or lose wages because of the accident. Bithoney had tweniy-one physical therapy visits as follow-up treatment at Bay State Rehabilitation. Bithoney’s wife and two sons also had follow up physical therapy at Bay State Rehabilitation of approximately the same duration.
Bithoney’s wife, Bernice Bithoney, resolved her claim for bodily injuries for Five Thousand Five Hundred ($5,500.00) Dollars and each son resolved his claim for bodily injuries for Five Thousand ($5,000.00) Dollars. Pilgrim and Bithoney’s own insurer, Liberty Mutual Insurance Company (Liberty Mutual), each paid one-half of the three settlements on a joint tort theory basis.
On July 26, 2000, Bithoney’s counsel (Counsel) forwarded to Pilgrim Bithoney’s relevant accident and medical reports and invoices to date. Later, Bithoney’s Counsel forwarded to Pilgrim additional medical reports and invoices. These invoices reflected that Bithoney’s special damages included Four Thousand *373 Seven Hundred Nineteen ($4,719.00) Dollars in medical expenses and Two Thousand Eight Hundred ($2,800.00) Dollars in automobile repair expenses for a total of Seven Thousand Five Hundred Nineteen ($7,519.00) Dollars. Thereafter, Pilgrim made a settlement offer to Bithoney in the amount of Four Thousand ($4,000.00) Dollars. Bithoney rejected this offer and filed suit in the Boston Municipal Court. Discovery was conducted in that case, including interrogatories, requests for production of documents, and depositions of the parties. It was Bithoney’s position that Henry was solely responsible for the accident and that Pilgrim’s settlement offer was unreasonable in light of the injuries and special damages that Bithoney had incurred. It was Pilgrim’s position that the value of Bithoney’s case was reduced by comparative negligence since Bithoney was partially responsible for the accident. Pilgrim increased its settlement offer to Four Thousand Five Hundred ($4,500.00) Dollars around the time of the trial. Bithoney rejected the offer.
The Boston Municipal Court case was tried before a district court judge (Meagher, J.) on November 27, 2002. Judgment entered for Bithoney in the amount of Fifteen Thousand ($15,000.00) Dollars, plus Two Thousand Eight Hundred ($2,800.00) Dollars for property damage to Bithoney’s vehicle. The Judge did not find that Bithoney was comparatively negligent. An Execution was issued on or about January 24, 2003, in the amount of Nineteen Thousand Four Hundred Ten and 16/100 ($19,410.16) Dollars, which reflected the amount of the Judgment plus interest and costs.
A- Pilgrim’s Failure to Offer More than $4,500.00 in Settlement Prior to Trial
General Laws, c. 93A, §2(a) incorporates G.L.c. 176D, §3(9), “and an insurer that has violated G.L.c. 176D, §3(9)(f), by failing to ‘effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear,’ by definition, has violated the prohibition in G.L.c. 93A, §2 against the commission of unfair or deceptive acts or practices.” Hopkins v. Liberty Mutual Ins. Co., 434 Mass. 556, 564 (2001) (citations omitted). Together, G.L.c. 176D, §3(9) and G.L.c. 93A “require an insurer . . . ‘promptly to put a fair and reasonable offer on the table when liabiliiy and damages become clear either within the thirty-day period set forth in G.L.c. 93A, §9(3), or as soon thereafter as liability and damages make themselves apparent.’ ” Bobick v. United States Fidelity and Guaranty Trust 439 Mass. 652, 659 (2003), quoting Hopkins, 434 Mass, at 566. See also R.W. Granger & Sons, Inc. v. J&S Insulation, Inc., 435 Mass. 66, 72-78 (2001). Therefore, an insurer is not required to put a fair and reasonable offer on the table until liability and damages become apparent. Id. See also Clegg v. Butler, 424 Mass. 413, 421 (1997) (holding that liability under G.L.c. 176D, §3(9)(f) includes both fault and damages and that an insurer must be given time to investigate claims to determine its liability).
Marsha Kaufmann, a senior claims examination for Pilgrim (Kaufmann), testified at the trial. According to Kaufmann, she took over the case from another adjuster. She testified that Pilgrim’s settlement offers were based upon its position that liability did not fully rest with its insured. In making that analysis, the factors that Pilgrim considered included the following: (1) that an arbitrator conducting an inter-company arbitration between Liberty Mutual and Pilgrim relative to the underlying accident found that Bithoney was partially at fault,[1] (2) the PIP offset; (3) her review of photographs, Henry’s statement, the summary of Bithoney’s deposition, and analyses by adjusters previously assigned to the case; (4) that the intersection where the accident occurred had neither traffic controls nor stop signs and was known to be dangerous; (5) that the point of contact between the two vehicles was the front of Bithoney’s vehicle and the left comer and side of Henry’s vehicle; (6) that the Emergency Medical Service notes and the nursing triage notes after the collision each (erroneously) indicate that Bithoney’s vehicle struck Henry’s vehicle; (7) that Bithoney’s medical bills were virtually the same as those of his wife and two sons; and (8) that because Pilgrim paid only Two Thousand Seven Hundred Fifty ($2,750.00) Dollars and Two Thousand Five Hundred ($2,500.00) Dollars to settle the claims of Bithoney’s wife and sons, settlement offers of Four Thousand ($4,000.00) Dollars and then Four Thousand Five Hundred ($4,500.00) Dollars were reasonable in light of Bithoney’s comparative negligence. Kaufmann further testified that she made the decision to simply pay the Judgment instead of filing an appeal. At trial, plaintiff did not introduce expert testimony that Pilgrim’s position was unreasonable. Given the information available to Pilgrim, this court finds that Bithoney has not established that the failure of Pilgrim to make a larger settlement offer to Bithoney prior to the Boston Municipal Court trial violated G.L.c. 176D.
B. Pilgrim’s Failure to Immediately Pay the BMC Execution
An Execution in the amount of Nineteen Thousand Four Hundred Ten and 16/100 ($19,410.16) Dollars was issued by the Boston Municipal Court (BMC) on January 24, 2003. After receiving it, Counsel sent the Execution to Pilgrim. On February 25, 2003, Counsel sent to Pilgrim a Chapter 176D letter based upon Pilgrim’s failure to settle the case before the BMC trial and Pilgrim’s failure to pay the Execution during the prior four weeks. The demand letter included a demand of Thirty-eight Thousand Eight Hundred Twenty and 32/100 ($38,820.32) Dollars to fully settle Bithoney’s claims. Kaufmann advised Counsel in a phone call which she confirmed in a letter dated March 4, 2003, that Pilgrim needed Bithoney’s social security number before Pilgrim could issue the check because *374 Massachusetts law required Pilgrim to run a check with the Department of Revenue for any outstanding child support obligation. Kaufmann’s letter further stated that federal law required Pilgrim to certify Counsel’s taxpayer identification number and enclosed a W-9 for Counsel to complete. The letter included Pilgrim’s fax number and stated that a check would be issued as soon as it received the needed information. Thereafter, Counsel forwarded the requested information. Pilgrim issued a check in the full amount, payable to Bithoney and Counsel, on March 17, 2003. A total period of some seven weeks elapsed between the date of the BMC Execution and Pilgrim issuing the check. Because some of that time elapsed while Pilgrim was trying to obtain necessary information from Bithoney, Bithoney has failed to establish that the delay by Pilgrim in issuing the check violated G.L.c. 176D.
C. Pilgrim’s Inclusion of the “Full Settlement" Language
The check was attached by a perforated line to another sheet of paper which was labeled “Customer Copy” (attachment). Both the attachment and the check contained information about the claim, including the check payees, insured, claimant, claim number, check number and policy number. On the attachment, however, was a box with the wording: Payment Explanation, Bodily Injury — In Full and Final Settlement of All Claims.[2] This full settlement wording did not appear on the actual check. When Counsel saw this full settlement wording, he called Kaufmann. Thereafter, Counsel summarized his telephone conversation with Kaufmann in a letter dated March 18, 2003. In the letter, Counsel indicated that he had called Kaufmann to make sure that the check was only in settlement of the underlying judgment and not the impending G.L.c. 176D claim; that Kaufmann told him it was Pilgrim’s position that the check was in full settlement of both the underlying claim and the G.L.c. 176D claim; and that because they could not agree upon which claims the check was in settlement of, Kaufmann told Counsel to mail the check back to her.
Almost four months later, on July 14, 2003, an attorney representing Pilgrim wrote to Counsel. In his letter, the attorney stated that Pilgrim had issued payment to him in March of 2003; that Counsel had refused to accept the payment; that Pilgrim was ready, willing, and able to pay the judgment and execution; and, that if Counsel would like Pilgrim to reissue the check, he should contact Kaufmann directly. On July 17, 2003, Counsel responded by letter to Pilgrim’s attorney. In that letter, Counsel restated his contention that Pilgrim violated G.L.c. 176D. Counsel also reiterated that his understanding of Pilgrim’s position was that the check covered both the underlying claim and the impending G.L.c. 176D claim; that since Pilgrim would not reissue another check without the “release” notation, he had returned the check to Pilgrim; and that although Bithoney would like to have his money, he would not forego his G.L.c. 176D claims against Pilgrim. Counsel ended this letter with the words “(A]waiting your response.” Pilgrim never responded to this letter. Bithoney subsequently filed this G.L.c. 176D action.
At the trial, Kaufmann testified that she never represented to Counsel that cashing the check would bar Bithoney from bringing a G.L.c. 176D claim. The court, however, does not accept Kaufmann’s testimony for two reasons. First, Counsel sent the above described letter to Kaufmann dated March 18, 2003 expressing his concerns that the check was in full settlement of both the underlying claim and the G.L.c. 176D claim. When Pilgrim finally responded to this letter some four months later,[3] it did not mention or address Counsel’s concern; instead, the letter simply stated that Pilgrim was ready to reissue the check if Counsel now wanted it. Second, Counsel’s letter sent back to the attorney for Pilgrim on July 17, 2003 reiterated his concerns that cashing the check would mean Bithoney was releasing his G.L.c. 176D claim against Pilgrim. Pilgrim never responded to Counsel’s letter.
Pilgrim’s argument that the language on the check stub is not controlling implies that the words “In Full and Final Settlement of All Claims” could just be ignored because they have no legal effect. Once liability and damages became clear, which they did after the trial in the Boston Municipal Court, G.L.c, 176D, §3(9) (f) required Pilgrim to effectuate a prompt, fair and reasonable settlement of the claim. Failure to eliminate the unwarranted and misleading “settlement” language or to advise Counsel in response to his two letters to disregard that language violated this provision. Pilgrim had no right to place Bithoney in the position of providing it with a potential defense if Bithoney should cash the check, even if that defense would not ultimately be successful at the G.L.c. 176D trial.[4]
This court further finds that Pilgrim’s unfair acts were done wilfully and knowingly. Therefore, Bithoney shall be awarded double damages in the amount of Thirty-eight Thousand Eight Hundred Twenty and 32/100 ($38,820.32) Dollars, along with attorneys fees and costs.
ORDER
Judgment shall enter for the Plaintiff, George Bithoney, in the amount of Thirty-eight Thousand Eight Hundred Twenty and 32/100 ($38,820.32) Dollars, plus interest, costs and attorneys fees. Plaintiff shall serve his request for attorneys fees, including itemized billing records, upon defendant’s counsel pursuant to Superior Court Rule 9A within fourteen days of this Order. After review of plaintiffs request and defendant’s response, this court will schedule a hearing, if necessary, on the amount of attorneys fees.

 It was for this reason that the claims of Mrs. Bithoney *375 and the Bithoneys’ two sons were paid by Pilgrim and Liberty Mutual on a joint tort theory basis.

 Kauftnann testified at trial that the attachments to all of Pilgrim’s settlement checks contain this notation. She further testified that Pilgrim never asked Counsel for a release of the G.L.c. 176D claim.

 Kauftnann did not respond to the letter; instead an attorney representing Pilgrim sent the response.

 Pilgrim could assert as a defense that Bithoney had released his G.L.c. 176D claim by cashing Pilgrim’s check which had been furnished “In Full and Final Settlement of All Claims.”