This case arises from a motor vehicle accident in which the plaintiffs sued defendant Plymouth Rock Assurance Corporation (PRAC) and its insureds, defendants Annette and Nicola Liquori. The parties agreed to arbitrate the tort claims. The arbitration agreement included so-called "high/low" amounts, established interest provisions, and specifically excluded the G. L. c. 93A claims against PRAC. The voluntary arbitration resulted in an award of $905,000, well in excess of the high limit of $250,000 agreed to by the parties. PRAC paid the $250,000 within the required time frame. The plaintiffs then moved to confirm the $905,000 award, which motion was denied. The remaining G. L. c. 93A claim was tried before a judge of the Superior Court, where the plaintiffs again sought to confirm the $905,000 award. The judge found that PRAC had violated G. L. c. 93A and trebled the damages, using the base measure of $250,000 as damages. She also confirmed the previously satisfied $250,000 award. Both parties filed posttrial motions objecting to the judgment, which were denied. This cross appeal followed.[4]
The plaintiffs claim error in the judge's findings as to the measure of damages for the purpose of assessing damages under G. L. c. 93A. PRAC claims that the plaintiffs did not prove that its investigation and settlement offers violated G. L. c. 93A, that they did not prove PRAC wilfully and knowingly violated G. L. c. 93A so as to warrant multiple damages, and that the judge erred in calculating the damages award pursuant to G. L. c. 93A. We reverse.
Background. On August 19, 2009, Johanna Lief-Socolow's (Johanna's)[5] Toyota vehicle was struck by an Acura vehicle operated by the defendant-insured, Annette Liquori. While Johanna did not seek medical treatment at the time,[6] she began to experience headaches, insomnia, and back pain shortly thereafter. The nature of her injuries was not easily diagnosable or apparent. However, over time it became clear that Johanna became increasingly forgetful, disorganized, irritable, and less intelligent than she was prior to the accident. On the eve of the arbitration proceedings, Johanna's medical bills totaled more than $12,000. Prior to the agreement to arbitrate, in June, 2010, PRAC offered $9,000 to settle the claim based on the information it had at the time. John M. Socolow, Johanna's husband and the family's attorney, demanded $250,000 and, subsequently, $300,000, where his demand remained. In October, 2010, PRAC made another offer, this one in the amount of $16,000. Finally, in December, 2010, PRAC offered $35,000 to resolve the claim. Unable to settle the claim, the parties submitted to voluntary arbitration with a low of $35,000 and a high of $250,000, the policy limit. The arbitrator, who by agreement was not aware of the high/low, awarded the plaintiffs $905,000. PRAC then promptly paid $250,000 to the plaintiffs.
Discussion. 1. Confirmation of arbitration award. We review a judge's decision to confirm an arbitration award de novo. Massachusetts Hy. Dept. v. Perini Corp., 79 Mass. App. Ct. 430, 436 (2011). The plaintiffs argue that the judge erred in failing to confirm the full arbitration award of $905,000. PRAC claims that it was error to confirm the arbitration award at all, as it was satisfied in full. We agree with PRAC.
The purpose of confirming an arbitration award is to "enable a plaintiff to collect an unsatisfied award." Murphy v. National Union Fire Ins. Co., 438 Mass. 529, 532 (2003). However, if the award is satisfied, confirmation of the award becomes moot. Id. at 533. A trial court has no jurisdiction to hear an action to confirm an arbitration award if it has been fully satisfied. Diaz v. Cruz, 76 Mass. App. Ct. 773, 774 (2010). Here, PRAC promptly paid the $250,000 after the arbitrator's decision issued. As such, confirmation of the arbitration award was already moot when the judge confirmed the award.[7] Confirmation of the award was error.
2. General Laws c. 93A claim. PRAC claims that it was error for the judge to find that it violated G. L. c. 93A in two respects: (1) that PRAC refused to pay the claim without conducting a reasonable investigation, and (2) that it failed to effectuate a prompt, fair, and equitable settlement when liability became reasonably clear. We agree.
" General Laws c. 93A, § 2(a ), states that '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are ... unlawful.' " Bobick v. United States Fid. & Guar. Co., 439 Mass. 652, 658 (2003). General Laws c. 176D, § 3, bans "unfair or deceptive acts or practices in the business of insurance," including "[u]nfair claim settlement practices." G. L. c. 176D, § 3, inserted by St. 1972, c. 543. "The former statute incorporates the latter, and [accordingly] an insurer that has violated G. L. c. 176D, [§ 3(9) ], ... by definition, has violated the prohibition in G. L. c. 93A, § 2, against the commission of unfair or deceptive acts or practices." Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 564 (2001). Moreover, "[a]n insurer's duty to settle arises when liability has become reasonably clear." O'Leary-Alison v. Metropolitan Property & Cas. Ins. Co., 52 Mass. App. Ct. 214, 217 (2001) (quotation omitted).
a. Reasonable investigation. Here, the judge found that PRAC did not perform any meaningful prelitigation investigation into Johanna's injuries. We disagree. PRAC was in regular communication with John, who initially was serving as the family attorney. PRAC received from John multiple medical records with conflicting opinions about the existence of Johanna's injuries. Thereafter, PRAC obtained three independent medical examination (IME) reports. It also engaged the services, and relied on the expertise, of a neurologist, who opined that Johanna did not suffer any neurological damage. PRAC could rely on independent medical advice from a neurologist when both the extent of the injuries as well their nexus to the accident are unclear. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 217-218. Indeed, PRAC had reason to be skeptical as to the extent of Johanna's injuries. See Silva v. Norfolk & Dedham Mut. Fire Ins. Co., 91 Mass. App. Ct. 413, 417 (2017). Johanna did not report any injuries at the scene of the accident and did not receive care at the emergency department. Her injuries were also not readily apparent or diagnosable at the initial stages of the investigation. PRAC's decision to hire a neurologist for a medical records review after obtaining three IME reports fulfilled PRAC's investigatory obligation. To find otherwise was error.
PRAC also relied on the experience and opinion of its attorney, with whom PRAC had worked for twenty years. "A plausible, reasoned legal position that may ultimately turn out to be mistaken-or simply ... unsuccessful-is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D." Guity v. Commerce Ins. Co., 36 Mass. App. Ct. 339, 343 (1994). PRAC's reliance on seasoned counsel was justified and did not constitute an unreasonable investigation.
b. Reasonableness of settlement offers. In a claim for violation of G. L. c. 93A, the standard for assessing PRAC's settlement offer is "whether, in the circumstances, and in light of the complaint's demands, the offer is reasonable." Klairmont v. Gainsboro Restaurant, Inc., 465 Mass. 165, 184 (2013) (citation omitted). The standard is an objective one, and the reasonableness of the offer is determined at the time it is made. Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 628 (1978).
At the time the case went to arbitration, Johanna's medical bills totaled more than $12,000. Thus, based on the information that PRAC had at the time, it was reasonable for it to offer $9,000, then $16,000, and finally $35,000 prior to arbitration. Moreover, the plaintiffs negotiated and accepted the high/low arbitration parameters thereby agreeing to settle the claim for an amount between $35,000, PRAC's highest offer, and $250,000, the insured's policy limits. The difference between the offer made and the amount awarded did not violate G. L. c. 93A where PRAC relied on medical expert opinions that contested damages. See Parker v. D'Avolio, 40 Mass. App. Ct. 394, 401-402 (1996). To find otherwise was error.[8]
The judgment is reversed. A new judgment shall enter in favor of PRAC.
So ordered.
Reversed.

The plaintiffs appeal from the judgment and the order denying their motion to alter or amend the judgment. PRAC appeals from the judgment and the order denying its motion for new trial and/or for remittitur.

We use first names as the plaintiffs share a surname.

Johanna accompanied her friend, who was a passenger, to the emergency department where her friend was treated. However, the plaintiff did not seek treatment herself. Afterward, Johanna, her friend, and their six children took a taxicab to Six Flags and spent the day there.

The plaintiffs argue that Murphy is inapplicable as the claim there arose from an underinsured motorist where arbitration was mandated, and did not address the so-called "interplay" between G. L. c. 93A and G. L. c. 251. This argument is without merit. Regardless of whether an arbitration is mandated, when an arbitration award is satisfied, confirmation of the award becomes moot. Murphy v. National Union Fire Ins. Co., supra. Moreover, Murphy addressed this interplay as the case resolved whether the plaintiffs there were entitled to a "judgment" confirming their arbitration award for the purpose of doubling or trebling damages under a G. L. c. 93A claim. Id. at 532-533.

Because we conclude that it was error to find that PRAC violated G. L. c. 93A, we need not reach the measure of damages claims.