# United States Court of Appeals
## For the First Circuit

No. 23-1507

JIAJING (BEIJING) TOURISM CO., LTD.,

Petitioner, Appellee,

v.

AEROBALLOON USA, INC.; DOUGLAS A. HASE; EVEREST BALLOON LLC,

Respondents, Appellants,

TETHERED HELIUM BALLOON,

Respondent.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Gelpí, Circuit Judges.

Lee Harrington, with whom Ascendant Law Group LLC was on brief, for appellants.
Marc Redlich, with whom Law Offices of Marc Redlich, Richard L. Blumenthal, Law Offices of Richard L. Blumenthal, Jeffrey G. Thorn, and Thorn Law PLLC were on brief, for appellee.

February 22, 2024

**LYNCH**, **Circuit Judge**.  Aeroballoon USA, Inc., and its owner and sole employee Douglas Hase appeal from a jury verdict on two counts in favor of Jiajing (Beijing) Tourism Co., Ltd.  The jury awarded damages of $1.6 million on Jiajing's claim that Aeroballoon made fraudulent transfers to Hase and several other of Hase's wholly owned businesses (the "Hase Entities") in violation of the Massachusetts Uniform Fraudulent Transfer Act ("UFTA"), Mass. Gen. Laws ch. 109A, § 5, (Count II) and $1.6 million on Jiajing's Chapter 93A claim against Hase and the Hase Entities for unfair business practices, Mass. Gen. Laws ch. 93A, (Count IV). Not appealed from are two other rulings for Jiajing.[1]

The district court sua sponte ordered remittitur, reducing the damages award on each count now on appeal to $1.113 million.  Neither side appeals the remittitur.  Aeroballoon/Hase argue in their brief that they were entitled to judgment as a matter of law on Count II, the fraudulent transfer claim, because (1) Jiajing failed to carry its burden to prove that Aeroballoon engaged in fraudulent transfers and (2) the jury's award of $1.6 million as a damages figure for the fraudulent transfer claim demonstrates that the jury failed to follow the jury instructions.

---

[1]  The jury also found for Jiajing on its claim seeking to pierce the corporate veil between Aeroballoon, Hase, and the Hase Entities (Count III).  In addition, the district court entered judgment in favor of Jiajing on its claim to enforce a 2019 arbitration award against Aeroballoon (Count I).

From this they argue it follows that judgment should have been entered in their favor on Count IV, the Chapter 93A claim, because, in their view, the allegedly fraudulent transfers at issue in Count II form the only basis for Count IV. Aeroballoon/Hase's arguments are misplaced. Indeed, at oral argument they admitted that sufficient evidence supported the jury's verdict on these counts as remitted, and that dooms their appeal.

We briefly describe the facts of record. Aeroballoon's business at the time it entered a contract with Jiajing was the manufacture and sale of tethered helium balloons, which it marketed as amusement-type rides and tourist attractions. In January 2016, Aeroballoon entered into a contract with Jiajing, a Chinese company, for the sale of two such balloons for a total price of $1.8 million, delivery August 2016. Although Jiajing made periodic payments per the terms of the contract totaling $1,018,940, Aeroballoon did not deliver any balloons. As a result, Jiajing arbitrated the contract dispute, and on September 20, 2019, Jiajing was awarded the sum of $1,410,739.01 plus interest[2] for Aeroballoon's breach of that contract. The appellants admit

_____

[2] The Chinese arbitration panel's award is denominated in part in renminbi. In this enforcement lawsuit in the United States Jiajing asserted that the value of that arbitration award in U.S. dollars was $1,410,739.01, and Aeroballoon did not dispute that point.

- 3 -

Aeroballoon was insolvent as of that date. Following that award, Hase formally dissolved Aeroballoon on October 10, 2019.

On July 13, 2020, Jiajing filed a complaint against Aeroballoon in the U.S. District Court for the District of Massachusetts seeking enforcement of the arbitration award. Jiajing later amended its complaint to name Hase and several Hase entities and to add three counts, including the fraudulent transfer (Count II) and Chapter 93A (Count IV) claims.

After discovery and motion practice, the district court held a jury trial from October 25 to 27, 2022. At the time of trial, the value of Jiajing's arbitration award plus accrued interest was approximately $1.6 million, and the parties and the trial judge regularly referred to that figure during trial. On October 27, after roughly four hours of deliberation, the jury returned a verdict for Jiajing on all counts, awarding damages of $1.6 million on the fraudulent transfer claim and $1.6 million on the Chapter 93A claim. On March 21, 2023, the trial judge, based on a misunderstanding of the record, ordered remittitur reducing the damages award on the fraudulent transfer and Chapter 93A claims to $1.113 million each, to which Jiajing agreed. On May 16, 2023, the district court entered judgment of $2,102,453.01, including a $691,714 award of attorney's fees and costs to Jiajing as prevailing party under Chapter 93A.

As to the fraudulent transfers claim, a debtor's transfer is fraudulent as to a creditor under the UFTA, Mass. Gen. Laws ch. 109A, when the debtor makes (1) a transfer for which the transferor does not receive reasonably equivalent value, (2) at a time when the transferor believes or reasonably should believe that he would incur debts beyond his ability to pay as they became due. See In re Rowanoak Corp., 344 F.3d 126, 130 (1st Cir. 2003) (citing Mass. Gen. Laws ch. 109A, § 5(a)(2)).[3] As to the Chapter 93A claim, that statute makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). A single such act is sufficient to create liability for unfair or deceptive business practices. See Hopkins v. Liberty Mut. Ins. Co., 750 N.E.2d 943, 948 (Mass. 2001). The appellants agree and do not assert there was any error of law and do not challenge either the jury verdict form or the instructions.

At trial each side presented an expert witness, who had competing opinions as to Aeroballoon's solvency from 2016 until its dissolution and the cause of any insolvency. Simon Platt, Jiajing's expert, identified $1,113,071 in payments made from Aeroballoon to Hase's personal accounts or the account of one of

---

[3] The statute also provides that a transfer is fraudulent when made with actual intent to hinder or delay a creditor's ability to collect, Mass. Gen. Laws ch. 109A, § 5(a)(1), and Jiajing also presented evidence of this theory of liability at trial.

the Hase Entities from April 2016 to September 2019. Hase's regular Aeroballoon salary was $48,000 annually, and he failed to report these transfers to his personal account as income in his tax filings in the relevant years. Platt also testified to further value transferred from Aeroballoon to Hase from 2016 to 2019 in that Hase had charged personal items to Aeroballoon's business credit cards.

As to the date of insolvency, Platt testified that "Aeroballoon was insolvent at the end of [20]17 and '18 and '19 and was likely insolvent in [20]16" and that Hase's transfers to himself of Aeroballoon's money "ha[d] essentially driven the insolvency of the company." Platt testified that the $1,018,940 in pre-delivery payments from Jiajing to Aeroballoon under the balloon sale contract were unearned income until Aeroballoon performed under the contract, and thus were properly considered a liability of the company until and unless Aeroballoon performed, which it never did.

Michael Goldman, Aeroballoon/Hase's expert, disagreed and testified that Jiajing's payments to Aeroballoon did not amount to a liability. Goldman also testified that a proper solvency analysis needed to take into account the fair market valuation of Aeroballoon's intangible assets such as goodwill, vendor relationships, and intellectual property, and that in his opinion

Aeroballoon was solvent at least until the arbitration award issued against it in September 2019.

Hase also testified, and so the jury could assess his credibility as he attempted to justify some, if not all, of the transfers to him. He called the transfers compensation in addition to his $48,000 annual salary, such as "dividends," "distributions," and a "bonus" in compensation for his services and the capital he invested in Aeroballoon when he started the company.[4]

The appellants did not renew their Federal Rule of Civil Procedure 50(a) motion, made and denied at the close of the defense's case, at the time the jury returned its verdict, nor did they object to the jury's verdict before the jury was discharged.

"We review the court's denial of a renewed motion for judgment as a matter of law de novo." Alvarado-Santos v. Dep't of Health of P.R., 619 F.3d 126, 132 (1st Cir. 2010). "We review the evidence in the light most favorable to the verdict and may reverse

---

[4] Hase also admitted that Aeroballoon made at least some payments on his personal credit card accounts. He testified that the charges on the Aeroballoon corporate card that appeared personal were in fact business-related or else were "reconciled later on through a personal payment to Aeroballoon." Hase also admitted that he had directed Aeroballoon customers to make payments due to Aeroballoon directly into his own personal accounts and had sometimes used Aeroballoon money to pay the invoices of his other businesses.

only if no reasonable person could have reached the conclusion arrived at by the jury."  Id.

Even assuming a standard of review in the appellants' favor, the argument against the jury's verdict on the fraudulent transfer claim has no merit.  Here, the district court's remittitur order, from which no party has appealed, is law of the case that the evidence at trial sufficed to support a verdict for Jiajing on the fraudulent transfers claim in the amount of, at a minimum, $1.113 million.  Further, at oral argument Aeroballoon/Hase agreed that a reasonable jury could have found, based on that evidence, that Aeroballoon had engaged in $1.113 million of fraudulent transfers by virtue of the direct, bank-to-bank transfers Aeroballoon/Hase's own expert identified and Hase himself admitted to.  Indeed, their own Exhibit 16 established that sum.  The jury verdict as remitted thus stands, as law of the case, because of admissions by the appellants and because, as described above, the evidence was more than sufficient to support it.  That disposes of the appeal from the UFTA verdict on Count II.

Even a single fraudulent transfer is sufficient to create liability under Chapter 93A and thus give rise to an award of attorney's fees.  See Hopkins, 750 N.E.2d at 948.  And there has been no challenge to the amount of the fee award.  Thus the appeal from the jury's Chapter 93A verdict on Count IV necessarily fails.

We affirm.  Costs are awarded to Jiajing.