SYNERGISTICS TECHNOLOGY, INC. *vs.* PUTNAM INVESTMENTS, LLC.

No. 08-P-1135.

Plymouth. April 14, 2009. - July 23, 2009.

Present: COHEN, KATZMANN, & GRAINGER, JJ.

*Contract,* Interference with contractual relations, Performance and breach. *Consumer Protection Act,* Unfair or deceptive act, Availability of remedy.

In a civil action in which the jury found in favor of the defendant on claims of intentional interference with a contract and breach of contract, but found in favor of the plaintiff on a claim of unfair and deceptive business practices in violation of G. L. c. 93A, the judge erred in denying the defendant's motion for judgment notwithstanding the verdict, where the defendant's hiring of an individual to place consultants with the defendant, despite knowing that the individual had a noncompete agreement with the plaintiff (a staffing company that similarly had a contract with the defendant to place consultants with it), did not rise to the level of a violation of G. L. c. 93A, in that G. L. c. 93A did not create any obligation on the defendant's part to shun the individual simply because he might become involved with the plaintiff over his contractual freedom. [689-691]

CIVIL ACTION commenced in the Superior Court Department on September 22, 2003.

The case was tried before *Robert C. Rufo,* J.

*Jonathan M. Albano* (*Irwin B. Schwartz* with him) for the defendant.

*Cynthia B. Hartman* for the plaintiff.

GRAINGER, J. A dispute based on an individual's transfer of services from one business to another requires, yet again, consideration of the extent to which G. L. c. 93A has augmented more traditional causes of action rooted in tort and contract law.

*Background.* The following facts are undisputed. The defendant Putnam Investments, LLC (Putnam), manages mutual funds and other investments. In the conduct of this business it utilizes

hired consultants that number in the hundreds; these consultants are usually obtained through staffing companies, one of which was the plaintiff, Synergistics Technology, Inc. (Synergistics). Synergistics is owned and operated by Gerard Connolly. Connolly previously worked as an independent consultant at Putnam; while there he met Brian Hilton, also then working at Putnam as an independent consultant.

After Connolly founded Synergistics, Hilton entered into an agreement with Synergistics titled "Professional Independent Consultant Contractor Agreement." The purpose of the agreement, as relevant here, was twofold. Synergistics provided Hilton's services to Putnam as a consultant and, second, Hilton was to identify consulting positions which Synergistics would be able to fill for its customers, including but not limited to Putnam. This initial agreement was followed by others, including a "Marketing Incentive Program" designed to provide incentive-based compensation for Hilton, and — most germane here — a second professional independent consultant contractor agreement (the second agreement). The relevant terms of the second agreement can be easily summarized:

> (i) The agreement was effective on March 20, 2000, and had a duration of one calendar year.

> (ii) Hilton agreed to give a minimum of thirty calendar days' notice to Synergistics if he decided to terminate the second agreement.

> (iii) Upon termination of the second agreement, Hilton agreed "not to accept employment with Putnam Investments or its subsidiaries on a permanent or temporary basis as an employee, consultant, agent or otherwise during the term of this agreement and for a period of six (6) calendar months following the termination of said agreement without the written consent of [Synergistics]."

> (iv) Synergistics agreed to waive this noncompete obligation at the conclusion of the contract in consideration of Hilton's (a) refraining from discussing the noncompete provision with Putnam or any Synergistics consultant, (b) refraining from soliciting or hiring any consultant who had worked for or was currently working for Synergistics, and (c) respect-

ing the business interests and client relationships Synergistics had developed with Putnam over the years by not harming or damaging those business relationships in any way.[1]

At or about the time of the second agreement, Hilton formed his own consulting company, known as R&B Financial Solutions, Inc. (R&B), and agreed with Synergistics that he would be paid for his services through R&B.

Putnam was not a party to any agreement, including the second agreement, between Hilton and Synergistics; while Synergistics sent Putnam an "engagement" letter, which stated that Hilton's assignment to Putnam had been extended by Synergistics and that his billing rate would be eighty-six dollars per hour, it made no mention of the noncompete or the noninterference clauses in the second agreement, and disclosed no other terms of its relationship with Hilton.

Thereafter Hilton began bypassing Synergistics and placing consultants with Putnam directly through R&B. This lawsuit, and a jury trial in the Superior Court, followed.

*Proceedings below.* Synergistics's complaint contained three counts: intentional interference with contract (count I), breach of contract (count II), and unfair and deceptive business practices in violation of G. L. c. 93A (count III). The jury, in answer to a series of special interrogatories, found that there was no contract between Putnam and Synergistics, that Putnam knew of the contract between Hilton and Synergistics, that Hilton had committed a breach of the contract, but that Putnam had not induced him to do so. Accordingly, the jury found for the defendant Putnam on both counts I and II, the interference and breach of contract claims. The trial judge gave the c. 93A claim to the jury to decide, reserving for himself the determination of multiple damages. The jury, again answering special interrogatories, found in favor of the plaintiff Synergistics on the c. 93A count, awarded damages of $900,000, and found that the violation was knowing and wilful. The judge denied Putnam's motions for a new trial and for judgment notwithstanding the verdict and, after setting off the jury's

---

[1]Synergistics's concerns in this area, which proved well-founded, were heightened by the fact that Hilton himself was one of the consultants it placed at Putnam.

$900,000 verdict by $165,000 as a result of Synergistics's recovery from Hilton in an earlier suit, entered an amended judgment in favor of Synergistics in the sum of $735,000, interest in the amount of $418,047.49, a multiple damages award of $735,000 under G. L. c. 93A, and attorney's fees and costs in the amount of $58,259.39, for a total award of $1,946,342.70. Pursuant to the jury's verdict, judgment entered in Putnam's favor on counts I and II of the complaint. Both parties filed timely notices of appeal from specific parts of the judgment.[2]

*Discussion.* Putnam asserts on appeal that the jury findings with respect to counts I and II of the complaint (the interference and contract claims) preclude a determination of c. 93A liability as a matter of law. Synergistics, on the other hand, argues that the absence of liability under other causes of action does not automatically resolve the issue of c. 93A liability, because c. 93A creates "new substantive rights by making conduct unlawful which was not previously unlawful under the common law or any prior statute." *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 626 (1978). See, e.g., *Bump* v. *Robbins*, 24 Mass. App. Ct. 296, 310-312 (1987) (reversing jury verdict for plaintiff on common-law claims, but affirming judge's finding for plaintiff on c. 93A claim). While c. 93A liability may sometimes be based on conduct that is neither tortious nor a breach of contract, we agree with Putnam — albeit on a different rationale — that this is not such a case. Even considering the evidence in the light most favorable to the plaintiff, see *Bellenger* v. *Monahan*, 282 Mass. 523, 526 (1933), Putnam's actions did not rise to the level of a c. 93A violation as a matter of law.

By special verdict, the jury found that Putnam was itself unfettered by any contractual obligation to Synergistics, and did not induce Hilton to commit a breach of his obligation to Synergistics. Nevertheless, Synergistics asserts that Putnam's hiring of Hilton,

---

[2]Putnam appeals from the denial of its motion for judgment notwithstanding the verdict on Synergistics's c. 93A claim and from the denial of its motion for new trial, arguing that the jury's verdict does not support c. 93A liability and that the judge miscalculated damages. Synergistics appeals from the judge's decision offsetting the jury verdict by $165,000 prior to awarding multiple damages under G. L. c. 93A, rather than offsetting after awarding multiple damages. The result we reach, see discussion, *infra*, makes it unnecessary to consider the damages claims of either party.

knowing he had a noncompete agreement with Synergistics (presumably having been so informed by Hilton in violation of the agreement), supports a claim for unfair conduct within the meaning of the statute, because doing so "facilitated" Hilton's breach of contract. We think this goes too far.

While not competitors in the strict sense of the term, i.e., not providing the same goods or services to the same market, Putnam and Synergistics had legitimate and opposing business interests in the use of the services provided by Hilton and R&B. Synergistics sought to protect the revenue stream provided by referral fees, while Putnam's business interest was to eliminate the middleman. While, as we have noted, the failure to attach tort liability does not resolve the question of c. 93A liability, our case law has explicitly dealt with the element of unfairness in this exact situation. Pursuit of a legitimate business interest, without more, fails to qualify as an improper means or motive in analyzing the elements necessary to support a claim for interference with contract. See *Hunneman Real Estate Corp.* v. *Norwood Realty, Inc.*, 54 Mass. App. Ct. 416, 428-429 (2002), citing Restatement (Second) of Torts § 768(1)(d) & comment g, at 43 (1979) (conduct directed, even if only in part, to advancing competitive interest is not improper). Here too, Putnam had a right to hire Hilton and R&B if it chose to do so regardless of Synergistics's claims against them or any contractual rights to their fealty. Alternatively stated, G. L. c. 93A does not create any obligation on Putnam's part to shun Hilton and R&B simply because those parties had an agreement with Synergistics or because they might become involved in a dispute over Hilton's contractual freedom. See *Hunneman Real Estate Corp.*, *supra* at 429, quoting from *Doliner* v. *Brown*, 21 Mass. App. Ct. 692, 698 (1986) (G. L. c. 93A, § 11, "has not been extended to apply to 'a party . . . competing for a business advantage because he is made aware that another has been exerting himself to the same end. That would be an extravagant rule of law' "). Putnam was not required to interpret the rights and obligations of parties to an agreement to which it was not itself a party and with which it had not interfered, and then act in the role of enforcer.[3] Neither case law, the purpose of the statute, nor common sense supports such a result.

---

[3] In this context it is pertinent, but not dispositive, that covenants not to

In short, we conclude that the conduct relied upon by Synergistics in support of its c. 93A claim, as a matter of law, was neither unfair nor deceptive. Accordingly, the judgment against Putnam on count III of Synergistics's complaint cannot stand. The order denying Putnam's motion for judgment notwithstanding the verdict is reversed. Judgment shall enter for Putnam on all counts of the complaint.

*So ordered.*

compete are generally disfavored unless they are appropriately limited in time and space, and often require individualized judicial consideration. See *Boulanger* v. *Dunkin' Donuts, Inc.*, 442 Mass. 635, 639 (2004), cert. denied, 544 U.S. 922 (2005). Technological advances and Internet commerce have further complicated traditional analysis in this area.