Fabricant, Judith, J.
INTRODUCTION
Skyhook and Google compete with respect to software for positioning functions in mobile devices using the Android operating system. Skyhook claims that Google has improperly interfered with Skyhook’s contractual relations with original equipment manufacturers. Skyhook seeks a preliminary injunction to prevent further such conduct. After hearing and review of all materials submitted, the Court declines to issue an injunction at this time.
BACKGROUND
At the risk of oversimplification as to technical aspects of the dispute, and with intentional opacity to protect information the parties have designated as confidential, the Court summarizes the facts based on the materials submitted.[1] Under contracts with Google, certain original equipment manufacturers, including Motorola and another entity that the parties have referred to as company X, produce and market Android-based mobile devices.[2] Such devices include a set of popular Google applications, known as Google Mobile Services (GMS). Among those applications are Google’s positioning system, known as Google Location Service, or GLS. Android devices also have the capacity to download and use applications created by independent developers and obtained through the so-called “Android Market,” which Google operates. Google’s contracts with manufacturers require that the devices be “Android compatible,” meaning (at least for present purposes) that no other software on the *626 device impairs the operation of GMS. Google reserves to itself the right to determine compatibility, and denies Android certification if it finds non-compliance. Google’s published standards of compatibility include both objective and subjective aspects. Denial of Android certification prevents the manufacturer from marketing the device under the Android name and including Google’s applications, and would prevent a user from obtaining access to applications through the Android Market. As a practical matter (and perhaps as a matter of contract between manufacturers and service carriers), such denial would render the devices unmarketable.
Skyhook makes a software product, known as XPS, which performs positioning functions using a combination of data from wireless network (“wi-fi”) access points, satellites, and cellular tower triangulation. By the combined use of those three sources, XPS is able to provide positioning data even when satellite data is unavailable. XPS thus functions in locations where satellite-based positioning systems do not and functions faster than those systems in some locations. Data obtained from wi-fi and cellular tower sources, however, tend to be less accurate than satellite-based data.
Both XPS and Google’s GLS collect location data from the device and transmit that data back to the software maker; each company incorporates that data into its database, on which the positioning software relies for its operation. Google also uses the data in connection with other applications in the GMS set. Inaccuracies in the data returned by the device affect the overall quality of the database, which affects operation of the other GMS applications as well as the positioning system.
In September of 2009, Skyhook entered into a contract with Motorola, under which Skyhook anticipated that Motorola would incorporate XPS into its devices. The contract provided that XPS would be the only software on the device that would collect and transmit positioning data back to the software maker. The contract also provided, however, that Motorola’s use of XPS would be subject to its pre-existing contractual obligations to third parties—that is, to Google, as well as service carriers.
Over a period of several months after execution of the contract, Skyhook and Motorola discussed questions of Android-compatibility. A focus of their discussion was whether XPS was incompatible because it would report data derived from wi-fi and cellular sources as if it derived solely from satellite sources. By April, Skyhook believed that the issue had been resolved, based on their mutual conclusion that that aspect of XPS would not render it incompatible. Neither had consulted Google on the question.
Skyhook publicly announced its contract with Motorola in April 2010. The following month, Google determined that XPS rendered the Motorola devices not Android-compatible, and so informed Motorola. In an e-mail to Motorola, dated May 27, 2010, a Google manager explained the problem. He commented that “we are definitely not asking you to remove Skyhook ... if we can do it in a compatible way, by all means let’s do it!” He emphasized, however, that Google would not accept “network-derived location data . . . that is advertised as GPS location data,” and that “we are not ok with you disabling Google’s Network Location Provider.” He suggested that “(y)ou should separate out the Skyhook implementation into a separate location provider.”
On June 4, 2010, Skyhook delivered to Motorola a revised version of XPS that Skyhook believed met compatibility requirements. Motorola, however, did not transmit the revised version to Google for testing. Neither did Skyhook. Instead, between June and August of 2010, Skyhook and Motorola exchanged communications about other issues in dispute between them. Among those other issues was the provision limiting data collection to Skyhook. Motorola asked Skyhook to waive that restriction, so as to enable Motorola to comply with its obligations to Google with respect to GMS. Skyhook refused to do so, proposing instead that Motorola disable the data collection functions of GMS on its devices, which Skyhook contended would not affect performance of other functions of GMS. Motorola responded that it could not proceed in that manner without violating its obligations to Google and its carriers, and that it was therefore absolved of its obligations under the Skyhook contract. In a letter dated August 17, 2010, Motorola informed Skyhook that “Motorola views the Agreement as terminated as a result of Skyhook’s material breaches.” It offered to continue negotiation in an effort to achieve “an amicable and productive resolution,” but “reserve(d) its right to enforce this termination in the event no mutually acceptable resolution is reached.”
A different series of events occurred with respect to company X, but the ultimate result was similar. Sky-hook and company X entered into a contract on April 1, 2010. The contract did not require company X to use XPS in its devices, but provided licensing arrangements for such use. By mid-June, communications had occurred between company X and Google, and then between company X and Skyhook, regarding the compatibility issue that had arisen with respect to the use of XPS on Motorola devices. Skyhook responded to company X by assuring it that XPS was compatible, and questioning Google’s motivation for raising issues of compatibility. Skyhook did not provide company X with the revised version of XPS that it had delivered to Motorola on June 4, 2010. After a series of further communications on the question of compatibility, the topic of discussions between Skyhook and company X shifted to company Xs concerns regarding Skyhook’s price. Ultimately, company X decided not to use XPS, explaining that decision, in an e-mail on July 10, 2010, as based on both performance and price.
*627 Skyhook brought this action against Google on September 15, 2010. Its complaint asserts three counts: intentional interference with the Motorola contract (count I); intentional interference with advantageous business relations, specified as relationships with Motorola and company X, and “potential business relationships with others” (count II); and violation of G.L.c. 93A. In a series of hearings, the Court ordered expedited discovery and scheduled proceedings on Skyhook’s anticipated motion for preliminary injunction. Skyhook filed the present motion on November 10, 2010. It seeks an injunction, during the pendency of the action, to prevent Google from “issuing stop-ship orders or otherwise directing mobile device manufacturers ... to exclude from their devices Skyhook’s location technology known as XPS, or to otherwise disable or alter XPS”; “threatening to withhold or delay access to Android ... for failure to exclude, alter or disable XPS”; and “demanding that [manufacturers] make location data obtained by XPS available to defendant.”
DISCUSSION
Under the well-established test of Packaging Industries Group v. Cheney, 380 Mass. 609, 617 (1980), a preliminary injunction is warranted only when the moving party establishes both a likelihood of success on the merits of the claim, and a substantial risk of irreparable harm in the absence of an injunction. Although the moving party must show both elements, a strong showing on one may, in some circumstances, compensate for a relatively weak showing on the other. See id. (court evaluates moving party’s claim of injury and chance of success “in combination”); see also Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C.Cir. 1877) (substantial possibility of success suffices if injunction is necessary to prevent irreparable harm and no substantial risk of harm to opposing party). Once these elements are established, the Court must balance the threatened harm against the harm that an injunction will inflict on the opposing party. Where relevant, the Court should also consider any impact the grant or denial of an injunction may have on the public interest. See T&D Video, Inc., v. City of Revere, 423 Mass. 577, 580 (1996).
Skyhooks contends that Google has interfered with its contract with Motorola, and with its relationship with company X, by the improper means of a pre-textual compatibility objection, and for the improper purpose of stifling competition. The same conduct, Skyhook alleges, violates G.L.c. 93A. Without an injunction, Skyhook argues, it will suffer irreparable harm, in that it will be prevented from all access to the market for Android devices; its revenues will suffer, as will its database from lack of access to data collected through such devices. The Court is not persuaded.
To prevail on a claim of tortious interference with contractual or advantageous business relations, a plaintiff must prove that it had a contract or advantageous business relationship with a third party; that the defendant knew of the contract or relationship; that the defendant interfered with the contract, inducing the third party to break the contract or terminate the relationship; and that the defendant did so by improper means or for an improper motive. See Draghetti v. Chmielewski, 416 Mass. 808, 812 (1994); United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 816 (1990). Here, the first two of these elements appear to be undisputed, but the second and third are intensely disputed. As the record stands thus far, in the Court’s view, the plaintiffs showing is not strong.
As to interference with respect to Motorola, the record indicates that Google directed Motorola not to ship devices that Google determined to be incompatible, but did not close off the prospect that it would approve devices with a revised version of XPS. Google never had the opportunity to consider the revised version, since neither Motorola nor Skyhook ever submitted it. Nor does the record establish that Motorola breached or terminated its contract as a result of anything Google did; the record as presently presented leaves considerable uncertainty as to Motorola’s motivations, and as to who if anyone, as between Skyhook and Motorola, may have breached.
As to company X, the record is weaker. The evidence indicates that Google raised a question about compatibility, triggering discussions on the subject between Skyhook and company X. But no evidence indicates that Google ever made any directive to company X, or that it made any determination of incompatibility as to any device produced by company X. What appears, rather, is that company X decided not to use XPS, for reasons of performance and price, independently of any issue of compatibility.
Skyhook’s theory, with respect to both Motorola and company X, appears to be that Google’s market power is such that it could, and did, dissuade these manufacturers from using XPS merely by raising questions about compatibility. The theory is not entirely implausible. On the record presently presented, however, the Court cannot conclude that Skyhook is likely to prevail at trial on that theory.
The evidence is similarly lacking on the issue of impropriety. The record does not support Skyhook’s contention that Google’s compatibility concern was pretextual. To the contrary, the evidence indicates that Skyhook and Motorola identified the same issue months before Google did, and recognized the possibility of non-compliance.[3] As to motive or purpose, although Google’s internal communications do reflect its desire to prevail in competition with Skyhook for the best performing positioning software,[4] the evidence does not support Skyhook’s theory that Google applied its compatibility requirements as a tactic to stifle competition.
*628 Skyhook makes much of Google’s insistence on retrieving positioning data through the devices. The Court perceives no impropriety in that[5] Skyhook does exactly the same; indeed, it sought to go further with respect to Motorola devices, through a contractual prohibition on software that would return data to any other source. Google’s contracts with manufacturers condition the use of its trademarks and applications on full functioning of its application package, which includes data retrieval functions. Skyhook has identified no principle of law that renders such a condition unlawful or otherwise improper.[6] See generally, Synergistics Technology, Inc. v. Putnam Investments, LLC, 74 Mass.App.Ct. 686, 690 (2009) (“Pursuit of a legitimate business interest, without more, fails to qualify as an improper means or motive in analyzing the elements necessary to support a claim for interference with contract”). Overall, the Court cannot conclude that Skyhook is likely to prevail on its claims of tortious interference or violation of G.L.c. 93A.
Nor does the record establish that Skyhook will suffer irreparable harm in the absence of an injunction. Motorola and company X had both terminated their relationships with Skyhook before this action was filed, expressing reasons unrelated to any action by Google. Nothing in the record suggests that an injunction of the sort Skyhook seeks in this action would change their minds. If Skyhook ultimately prevails on its claims of interference with its relationships with Motorola and company X, it will be entitled to monetary compensation for its resulting losses. That the amounts may be large in proportion to its revenues, as Skyhook contends, does not make the loss irreparable. As to potential relationships with other manufacturers, Skyhook provides only vague suggestions; nothing in the record identifies any imminent decision-making by anyone as to the use of XPS on any Android device.[7] Overall, the Court concludes that the present record does not establish a basis for preliminary injunctive relief.
CONCLUSION AND ORDER
For the reasons stated, Plaintiff Skyhook’s Motion for Preliminary Injunction is DENIED.

The parties have engaged in expedited discovery based on a stipulated protective order, and each has designated many of the materials produced, as well as transcripts of deposition testimony, as confidential. The Court has allowed a series of motions to impound various materials filed.

“Android” is an open-source operating system for mobile devices, and a corresponding open-source project led by Google. The name is a trademark of Google; Google authorizes its use under contracts with manufacturers.

The Court has not ignored Skyhook’s contention that Google lied in communications to the manufacturers about the compatibility issue. The evidence, as the Court reads it, does not support that contention.

The competition is not for revenue from licensing the software; Google makes its software available to its licensees without charge.

Any privacy concerns of users are outside the scope of the present litigation.

Skyhook has not alleged any antitrust violation, and the Court expresses no view on any such issue.

The record does indicate that Apple and certain other non-Android devices use XPS, and that Skyhook derives substantial and growing revenues from contracts for such use.