SUPERIOR COURT 
 
 GEM PLUMBING AND HEATING SERVICES, LLC v. RUSTY’S, INC; MICHAEL J. RODERICK; THOMAS R. HANSEN; AIR PROS MA, LLC; MICHAEL HANSEN; AND PAUL NEARY

 
 Docket:
 2484CV00083-BLS2
 
 
 Dates:
 May 24, 2024
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ON MOTION TO DISMISS CLAIMS AGAINST MICHAEL HANSEN, PAUL NEARY, AND AIR PROS MA, LLC
 
 

 Gem Plumbing and Heating Services, LLC, paid $6 million to buy a similar business (Rusty’s, Inc.) from Michael Roderick and Thomas Hansen. According to Gem, Roderick and Thomas Hansen knew but did not disclose that their employees Michael Hansen (“Hansen”, the son of Tom Hansen) and Paul Neary were running a competing business (Air Pros MA, LLC) using facilities, good will, and confidential customer information that belonged to Rusty’s. Gem alleges that, after it closed the transaction, Hansen and Neary induced some former Rusty’s employees to violate their non-solicitation agreements with Gem and convince others to leave Gem and instead join Air Pros.
Hansen, Neary, and Air Pros have moved to dismiss the claims against them. The Court will allow this motion in part with respect to the claim that Neary breached non-solicitation provisions in an employment agreement with Gem, because the factual allegations in the complaint do not plausibly suggest that Neary ever accepted Gem’s offer and entered into a binding contract.[1] It will otherwise deny this motion to dismiss because Gem has made allegations plausibly suggesting that Neary and Hansen engaged in tortious interference by knowingly inducing Gem employees to violate non-solicitation agreements by recruiting former Rusty employees to work for Air Pros, that the same conduct constitutes an unfair business practice that violates G.L. c. 93A, and that Neary and Hansen knowingly participated in a civil conspiracy to help Tom Hansen and Roderick defraud Gem.
 
--------------------------------------------
 
[1] To survive a motion to dismiss under Mass. R. Civ. P. 12(b)(6), a complaint  must make factual allegations that, if true, would “plausibly suggest … an entitlement to relief.” Lopez v. Commonwealth, 463 Mass. 696, 701 (2012), quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).
 
                                                            -1-
 
1. Contract Claims against Neary. The facts alleged by Gem make clear that it never entered into an employment agreement with Neary containing non- solicitation provisions. “The purpose of rule 12(b)(6) is to permit prompt resolution of a case where the allegations in the complaint clearly demonstrate that the plaintiff’s claim is legally insufficient.” Harvard Crimson, Inc. v. President and Fellows of Harvard Coll., 445 Mass. 745, 748 (2006). Where a complaint sets out “detailed factual allegations which the plaintiff contends entitle him to relief,” a claim must be dismissed if those allegations “clearly demonstrate that plaintiff does not have a claim.”  Fabrizio v.  City of Quincy,   9 Mass. App. Ct. 733, 734 (1980).
To form a binding contract, “[t]he parties must give their mutual assent by having ‘a meeting of the minds’ on the same proposition on the same terms at the same time.” I&R Mechanical, Inc. v. Hazelton Mfg. Co., 62 Mass. App. Ct. 452, 455 (2004), rev. denied, 444 Mass. 1102 (2005). “The manifestation of mutual assent between contracting parties generally consists of an offer by one,” covering all the material terms of an agreement between the parties, “and the acceptance of [that offer] by the other.” Id.
Gem alleges that, three days after closing on its purchase of Rusty’s, it gave Neary a proposed employment agreement that included non-solicitation and non-competition provisions. It further alleges that Neary signed a version of the agreement and then continued to show up for work.
But Gem also alleges that before signing the employment agreement Neary made two material changes to Gem’s proposal. First, he changed the compensation proposed by Gem. Second, Neary marked up the non- competition provision to note that he owned a water filtration company called Clean Water Pros MA, and wrote “May Be Conflict.” The clear implication of these notations is that Neary was asking Gem to revise the non-competition provision to exclude Clean Water Pros from its scope. Gem does not allege that it ever agreed to these changes.
By imposing these conditions on his acceptance of Gem’s offer, Neary’s response operated as a rejection of that offer, not as an acceptance. A contract is formed by offer and acceptance “where the offeree assents to the offer ‘in the terms in which it is made.’ ” Sea Breeze Estates, LLC v. Jarema, 94 Mass. App. Ct. 210, 215 (2018), quoting Moss v. Old Colony Trust Co., 246 Mass. 139, 148 (1923). “[A] conditional acceptance or one that varies from the offer in any substantial respect is in effect a rejection and is the equivalent of a new proposition.” Sea
 
                                                            -2-
 
Breeze Estates, supra, quoting Moss, supra. Indeed, “[a] notice of acceptance that is in any respect conditional … is not an operative notice of acceptance.” Christian v. Edelin, 65 Mass. App. Ct. 776, 779 (2006), quoting 3 Corbin on Contracts § 11.8, at 529–530 (rev. ed. 1996)).
Gem insists that Neary nonetheless accepted the employment agreement by signing it and continuing to show up at Rusty’s (now owned by Gem) for work. That is incorrect as a matter of law.
Though Neary signed a revised employment contract that Gem never accept, and continued to show up for work over the next week until Gem told Neary he was fired, that could not constitute acceptance of Gem’s prior offer. Having previously rejected the offer, by conveying a conditional acceptance that operated as a rejection, Neary was no longer free to accept Gem’s original offer without conditions. “[A]n offer once rejected cannot thereafter be revived by an attempted acceptance thereof.” Peretz v. Watson, 3 Mass. App. Ct. 727, 727 (1975) (rescript). That Neary continued to work as an employee at will without a new employment agreement could not, under the circumstances alleged in the complaint, signal an acceptance of Gem’s original offer.
In its complaint, Gem also makes the conclusory allegation that “Neary entered into an employment agreement … with Gem.” That does not negate its more detailed factual allegations showing that Neary rejected Gem’s offer. In deciding a motion to dismiss under Rule 12(b)(6), the Court must assume that the factual allegations in the plaintiffs’ complaints, and any reasonable inferences that may be drawn from the facts alleged, are true. See Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 223 (2011). However, it must “look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief.” Maling v. Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, 473 Mass. 336, 339 (2015), quoting Curtis v. Herb Chambers I–95, Inc., 458 Mass. 674, 676 (2011).
2. Tortious Interference Claims against Hansen and Neary. Gem has asserted viable claims that Hansen and Neary intentionally interfered with non- solicitation agreements that Gem had just entered into with other former employees of Rusty’s.
To state a claim for intentional interference with contractual relations, a party must allege facts plausibly suggesting that: “(1) [it] had a contract with a third party; (2) the defendant knowingly induced the third party to break that
 
                                                            -3-
contract; (3) the defendant’s interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.” Weiler v. PortfolioScope, Inc., 469 Mass. 75, 84 (2014), quoting G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991). 
In support of these interference claims, Gem alleges that:
o Hansen and Neary both knew that Gem was requiring former Rusty’s employees who wanted to keep working for Gem to enter into employment agreements that barred them from directly or indirectly soliciting other employees to work for any other business or person;
o Hansen and Neary, acting on behalf of Air Pros, induced Gem employees to violate their non-solicitation covenants by actively soliciting other employees to leave Rusty’s and accept employment at Air Pros; and
o as a result, as least seven former Rusty’s employees, representing 10 percent of the Rusty’s workforce, are now working at Air Pros.
These allegations plausibly suggest that Hansen, Neary, and Air Pros tortiously interfered with non-solicitation agreements between Gem and other former employees of Rusty’s.
The decision in Synergistics Technology, Inc. v. Putnam Investments, LLC, 74 Mass. App. Ct. 686 (2009), is not to the contrary. Synergistics holds in part that if a new employer hires someone who thereby commits a breach of a non-competition agreement with their former employer, but does nothing else to induce that breach, the new employer’s pursuit of its “legitimate business interest” in hiring qualified staff “fails to qualify as an improper means or motive in analyzing the elements necessary to support a claim for interference with contract.” Id. at 690.
Here, in contrast, Gem alleges that that Hansen and Neary knowingly induced some of their colleagues to breach their non-solicitation agreements, by helping recruit Rusty’s employees to quit and move to Air Pros. The allegedly deliberate use of recruiters whom Hansen and Neary knew were contractually bound not to solicit other employees adequately alleges use of “improper means” at the pleading stage. Since Gem adequately alleges improper means, it need not also allege facts suggesting improper motive. See  Kurker v. Hill,  44 Mass. App. Ct. 184, 191 (1998) (standard is interference “accompanied by
 
                                                            -4-
 
improper motive or improper means; the plaintiff need not prove [or allege] both”).
Hansen, Neary, and Air Pros argue that the interference claims must be dismissed because Gem fails to allege any facts suggesting that Hansen or Neary “intended to cause any former Rusty’s employees to breach their contracts.” This argument is unavailing.
Tortious interference with contractual relations does not require specific intent to interfere with a contract. Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d 937, 951-952 (Cal. 2003). This tort also applies where the defendant “does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action. [It] applies, in other words, to an interference that is incidental to the actor’s independent purpose and desire but known to him to be a necessary consequence of his action.” Id., quoting Restatement (Second) of Torts, § 766, comment j (1965); accord, e.g., Williams v. Chittenden Trust Co., 484 A.2d 911, 914 (Vt. 1984).
Section 766 of the second Restatement of torts “reflect[s] the law of Massachusetts.” Shafir v. Steele, 431 Mass. 365, 368 (2000). More generally, the Supreme Judicial Court has embraced the Restatement’s notion that in the tort sense “intentional” means “that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.” Deas v. Dempsey, 403 Mass. 468, 471 (1988) (quoting Restatement (Second) of Torts, § 8A (1965)); see also Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 84 (1984) (insurance exclusion for intentional harm applies where insured “specifically intend[ed] to cause the resulting harm” or was “substantially certain that such harm will occur”).
The arguments that Gem failed to plead its tortious interference claims with enough specificity are also without merit. Hansen, Neary, and Air Pros contend that Gem must “identify a specific contract that it had with a specific third party,” allege that Hansen and Neary “had specific knowledge” about a “particular employment agreement” with a “specific employee,” and specify exactly what that employee “did to solicit any other employee” and why they did so. This is all incorrect.
Gem is not required to state its tortious interference claims with particularity. See Mass. R. Civ. P. 9(b). Where Rule 9(b) does not apply, “[a] complaint ‘does
 
                                                            -5-
 
not need detailed factual allegations’ to survive a motion to dismiss for failure to state a claim….” Lipsitt v. Plaud, 466 Mass. 240, 252 (2013), quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).
By alleging that Hansen and Neary knew other former Rusty’s employees had entered into employment agreements with Gem that contained provisions barring solicitation of other employees to leave Gem, and that they then induced those other employees to violate their non-solicitation obligations, Gem has provided “enough detail about the obligations of the alleged contracts to allow a reasoned determination as to whether the second elements – breach of contract – is alleged.” Cf. Conformis, Inc. v. Aetna, Inc., 58 F.4th 517, 538 (1st Cir. 2023) (applying Massachusetts law).
3. Chapter 93A Claim against Hansen, Neary, and Air Pros. For much the same reasons, Gem has also stated a viable claim that Hansen, Neary, and Air Pros engaged in unfair business practices in violation of G.L. c. 93A, § 11.
“General Laws c. 93A ‘is a statute of broad impact’ that prohibits ‘unfair methods of competition’ and ‘unfair or deceptive acts or practices in the conduct of any trade or commerce.’ “Exxon Mobil Corp. v. Attorney  General, 479 Mass. 312, 315–316 (2018), cert. denied sub nom. Exxon Mobil Corp. v. Healey, 139 S. Ct. 794 (2019), quoting Slaney v. Westwood Auto, Inc., 366 Mass. 688, 693–694 (1975).
An act or practice is “unfair” within the meaning of c. 93A “if it falls ‘within at least the penumbra of some common-law, statutory, or other established concept of unfairness’; ‘is immoral, unethical, oppressive, or unscrupulous’; and ‘causes substantial injury to consumers.’ ” Id. at 316, quoting Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016), quoting in turn PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975).
The viable claim that Hansen, Neary, and Air Pros committed the common-law tort of intentionally interfering with contracts between Gem and its employees plausibly suggests that they thereby committed unfair business practices in violation of c. 93A. Cf. Melo-Tone Vending, Inc. v. Sherry, Inc., 39 Mass. App. Ct. 315, 320 (1995).
4. Civil Conspiracy Claim against Hansen, Neary, and Air Pros. Finally, the factual allegations in Gem’s complaint plausible suggest that Hansen, Neary, and Air Pros engaged in a civil conspiracy with Roderick and Tom Hansen to defraud Gem by keeping secret the existence of the Air Pros business and
 
                                                            -6-
 
thereby causing Gem to agree to pay far more for Rusty’s than it was actually worth.
To state a claim for civil conspiracy on a “concerted action” theory, a plaintiff must allege facts plausibly suggesting “an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement.” Bartle v. Berry, 80 Mass. App. Ct. 372, 383–384 (2011). In other words, this kind of conspiracy claim “is ‘akin to a theory of common law joint liability in tort.’ ” Greene v. Philip Morris USA Inc., 491 Mass. 866, 871 (2023), quoting Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994).
Gem alleges facts plausibly suggesting that Roderick and Tom Hansen committed fraud by deliberately concealing the fact that some Rusty’s employees were running a competing business out of Rusty’s offices, and using Rusty’s customer information to do so.
It alleges that all of the defendants—including Hansen, Neary, and therefore Air Pros—knew of the scheme by Roderick and Tom Hansen to sell Rusty’s at an inflated price by not disclosing anything about Air Pros. Knowledge may be alleged generally; the requirement of particularity does not apply. See Patriot Grp., LLC v. Edmands, 96 Mass. App. Ct. 478, 489 (2019); Mass. R. Civ. P. 9(b).
And Gem alleges other facts plausibly suggesting that Hansen, Neary, and Air Pros helped carry out the alleged fraud. Gem alleges that its president met with Hansen and Neary about five weeks before Gem completed its purchase of Rusty’s, and that both Hansen and Neary “expressed considerable interest” in Gem’s business and its planned acquisition of Rusty’s. And it further alleges that during this meeting Hansen told Gem’s president that he wanted to focus on sales once Gem became the owner of Rusty’s, and later on let Gem know (through Roderick and Tom Hansen) that he was excited to join Gem and was fully committed to making the change of ownership work. These allegations support an inference that Hansen and Neary were deliberately misleading Gem by creating the impression that they wanted to keep working for Rusty’s after Gem bought the company, when in fact they were planning to take the Air Pros business and as many Rusty’s employees as they could with them and away from Gem.
In deciding a Rule 12(b)(6) motion to dismiss, the Court must assume that the facts alleged in the complaint are true and must draw “every reasonable inference” in favor of the plaintiff from those allegations. Rafferty v. Merck &
 
                                                            -7-
 
Co., Inc., 479 Mass. 141, 147 (2018). An inference “need only be reasonable and possible;” it does not have to be “necessary or inescapable.” Parker v. EnerNOC, Inc., 484 Mass. 128, 132 (2020), quoting Commonwealth v. Kelly, 470 Mass. 682, 693 (2015).
ORDER
The motion to dismiss filed by Air Pros MA, LLC, Michael Hansen, and Paul Neary (doc. no. 21) is allowed in part with respect to the claim against Neary for breach of contract in count VI of the complaint, and denied in part with respect to the claims against Air Pros, Michael Hansen, and Neary for tortious interference, violating G.L. c. 93A, and civil conspiracy in counts VII, VIII, IX, and XI of the complaint.
@/s/Kenneth W. Salinger
Justice of the Superior Court
@May 23, 2024
 
xxz
 
 
@SUFFOLK, ss.
@2284CV00969-BLS2
@NAGESH MAHANTHAPPA, SOLELY IN HIS CAPACITY AS REPRESENTATIVE OF THE FORMER SECURITYHOLDERS OF TWISTDX, INC. v. ALERE, INC. AND INNOVACON, INC.
@DECISION AND ORDER ALLOWING DEFENDANT’S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
Nagesh Mahanthappa asserts claims on behalf of the former securityholders of TwistDx, Inc., which was purchased by Innovacon, Inc., and merged into a subsdidiary that later changed its name to Alere, Inc. Mahanthappa claims, solely on behalf of the former securityholders, that Alere and Innovacon breached the merger agreement and committed unfair or deceptive trade practices in violation of G.L. c. 93A.
Alere and Innovacon served 28 document requests on Mahanthappa. The last request asks for all documents that Mahanthappa intends to introduce as exhibits at trial; Mahanthappa responded by saying he has not yet determined what exhibits he intends to introduce at trial.
With respect to the first 27 document requests, Mahanthappa said that he personally has no responsive documents in his possession custody or control. He also objected to asking any of the other former TwistDx securityholders if they have responsive documents, taking the possession that he is not required to do so because he does not control documents that are within the former securityholder’s possession, custody, or control. This objection is without merit.
The Court finds and concludes that, since Mahanthappa is authorized to and is prosecuting this action on behalf of the former securityholders, he must make diligent efforts to obtain and produce all responsive documents that are in the possession, custody, or control of the former securityholders that he is representing.
The five TwistDx securityholders each were parties to and signed the merger agreement. They are Niall Arms, Irwin Heller, Mahanthappa, L. James Miller, and Derek Stemple.
 
                                                            -1-
 
In ¶ 12.1 of the merger agreement, the TwistDX securityholders appointed Miller—who was later succeeded as Mahanthappa—to be their “true and lawful attorney-in-fact, agent and proxy,” and granted him “full power and authority” to, among other things, “assert any claim” on their behalf and “to do all other things and to take all other action under or related to this Agreement … that the Representative may consider necessary or proper to effecture the transactions contemplated hereby and thereby to resolve any dispute with the Purchaser over any aspect of this Agreement[.]”
By authorizing their representative, now Mahanthappa, to assert claims on their behalf and do anything necessary to carry that out, the former TwistDx securityholders were authorizing their representative to gather and produce documents and otherwise participate in and respond to discovery requests on their behalf.
Under Massachusetts law, a civil litigant may sometimes be required to produce documents held by a third party even if the litigant has no “legal right to control” the third party. See Strom v. American Honda Motor Co., 423 Mass. 330, 336 (1996). So long as there is reason to believe that the litigant may be able to obtain documents from the third party, then the litigant is required to “make a good faith effort to obtain” them, even if they do “not have the legal right to obtain” the documents. Id.
This is consistent with practice under the Federal rules of civil procedure. Under Fed. R. Civ. P. 34, “documents are considered to be under a party’s control when that party has the right, authority, or practical ability to obtain the documents” (emphasis added). Mirlis v. Greer, 80 F.4th 377, 382 (2d Cir. 2023), quoting Coventry Cap. US LLC v. EEA Life Settlements, Inc., 333 F.R.D. 60, 64 (S.D.N.Y. 2019); accord, e.g., Sergeeva v. Tripleton Int’l Ltd., 834 F.3d 1194, 1201 (11th Cir. 2016); U.S. Intern. Trade Comm’n v. ASAT, Inc., 411 F.3d 245, 254 (D.C. Cir. 2006); Hammer v. Howard Medical, Inc., 2017 WL 1179864, at *3 (Del. Super. Feb. 14, 2017).[1]
 
--------------------------------------------
 
[1] The Court respectfully disagrees with the apparently contrary ruling in Fortis Advisors LLC v. Alergan W.C. Holding, Inc., No. 2019-0159-MTZ, 2020 WL 2498068, at *3 (Del. Ch. May 14, 2020). Fortis Advisors holds that control of documents, for purposes of Rule 34 discovery obligations, is limited to parties that have “the legal right to obtain the document requests upon demand.” Id. That is inconsistent with Massachusetts law. See Strom, 423 Mass. at 336.
 
                                                            -2-
 
“For that reason, ‘if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required.” Mirlis, supra, quoting Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 138 (2d Cir. 2007); accord, e.g., Linhares v. Woods Hole, Martha’s Vineyard, and Nantucket Steamship Auth. 2022 WL 17736800, at  *5  (D.Mass. Dec. 16, 2022) (quoting  Shcherbakovskiy)  (Talwani,  J.);  Benisek  v.  Lamone,  320 F.R.D. 32, 34–35 (D.Md. 2017).
The Court finds that Mahanthappa has the practical ability to obtain documents and information from the other former TwistDx securityholders, and therefore must make a good faith effort to obtain from them the documents requested by Alere and Innovacon. As noted above, the securityholders gave Mahanthappa that ability in the merger agreement. Furthermore, Alere and Innovacon have convincingly shown that Mahanthappa is able to obtain relevant information from the other former TwistDx securityholders when it suits him, such as when answering interrogatories. Mahanthappa may not gather responsive information when he thinks doing so may bolster the former securityholders’ claims, but refuse to make any effort to gather documents sought by Defendants.
ORDER
Defendants’ motion to compel production of documents is allowed in part. The Court orders Plaintiff to make diligent and good faith efforts to obtain responsive documents from each of the other former securityholders of TwistDx, Inc., and to produce responsive documents that are in the former securityholders’ possession, custody, or control by June 21, 2024. Defendants’ request for fees and costs is denied.
@/s/Kenneth W. Salinger
Justice of the Superior Court
@May 6, 2024
 
xxz
 
 
@SUFFOLK, ss.
@2284CV00652-BLS2
@PEERLESS INSURANCE COMPANY; LIBERTY MUTUAL INSURANCE COMPANY; AND OHIO CASUALTY INSURANCE COMPANY v. JOHN ROONEY
@DECISION AND ORDER DENYING PLAINTIFF’S MOTION TO COMPEL PRODUCTION OF CASE ASSESSMENT MATERIALS
John Rooney was severely injured in 2014 while working on the reconstruction of the Longfellow Bridge, which crosses the Charles River between Boston and Cambridge. In Rooney’s underlying personal injury lawsuit against the general contractor, a jury awarded compensatory damages of $26 million. Judgment entered in August 2021 for roughly $45.5 million, including interest and costs.
Peerless Insurance Company, Liberty Mutual Insurance Company, and Ohio Casualty Insurance Company (the “Liberty Insurers”) provided liability insurance coverage to the general contractor under several policies. Other insurers (the “AIG Insurers”) had provided additional excess liability coverage. Rooney ultimately settled the underlying claims for $27 million, with $19.5m being paid by the Liberty Insurers and $7.5 million by the AIG Insurers.
After Rooney threatened to sue the Liberty Insurers for allegedly failing to make a reasonable settlement offer before trial in the underlying case, in violation of G.L. c. 176D, § 3(9)(f), the Liberty Insurers filed this action seeking a declaratory judgment that they are not liable to Mr. Rooney under G.L. c. 93A because they “reasonably determined that liability was not reasonably clear.” Rooney asserts counterclaims that the Liberty Insurers committed unfair settlement practices in violation of G.L. c. 176D by failing to make a reasonable settlement offer once liability became reasonably clear, and also by not reasonably and promptly investigating Rooney’s claim. Rooney seeks treble damages plus attorneys’ fees and costs.
The Liberty Insurers have now moved to compel production of case assessment materials prepared by Rooney’s trial counsel in connection with the underlying personal injury action, “including information from jury consultants and focus groups.” The Court will deny this motion because the dispute documents and
 
                                                            -1-
 
materials have no potential relevance, and the outstanding document requests are not calculated to lead to the discovery of any other admissible evidence.[1][2]
Once an insured’s liability for a particular claim has become reasonably clear, the insurer has a duty under Massachusetts law to make a fair offer to settle the claim and to do so promptly. This duty is imposed on all insurers by statute. See G.L. c. 176D, § 3(9)(f). Where the claimant is a private individual, as in this case, an insurer that breaches its duty under c. 176D to make a reasonable settlement offer is automatically liable to the claimant under G.L. c. 93A, § 9. See Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 563–564 (2001).
“The question whether and when an insured’s liability became reasonably clear is based on an objective assessment of the facts known or available at the time.” Chiulli v. Liberty Mut. Ins., Inc., 97 Mass. App. Ct. 248, 256 (2020), quoting McLaughlin v. American States Ins. Co., 90 Mass. App. Ct. 22, 31 (2016). “The test used to determine whether a defendant’s liability became ‘reasonably clear’ is an objective one; it ‘calls upon the fact finder to determine whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insured was liable to the plaintiff.’ ” Bolden v. O’Connor Café of Worcester, Inc., 50 Mass. App. Ct. 56, 63 n.12 (2000), quoting Demeo v. State Farm Mut. Auto. Ins. Co., 38 Mass. App. Ct. 955, 956–957 (1995).
If focus group results obtained and other case assessments performed by plaintiffs’ counsel in a personal injury case are not shared with the defendant or their insurer, then those materials have no possible bearing on whether the facts known or available to the insurer showed the liability was reasonably clear. “[S]ettlement offers must be made in good faith given the insurer’s ‘knowledge of the relevant facts and law concerning [the] claim.’ ” Silva v. Norfolk & Dedham Mut. Fire Ins. Co., 91 Mass. App. Ct. 413, 418 (2017), quoting Bolden, 50 Mass. App. Ct. at 66. Assessments and information that the insurer knew nothing about and could not have obtained at the time are irrelevant.
For this reason, the Liberty Insurers have not shown that they are entitled to compel Rooney to produce such materials in this case.
 
--------------------------------------------
 
[1] Since the Liberty Insurers have not shown that the additional documents they seek have any potential relevance to this case, the Court need not determine whether Rooney waived the work product privilege that normally protects the documents at issue by producing other work product materials.
[2] The title of the motion incorrectly suggests that the Liberty Insurers’  are seeking to compel production of “plaintiff’s case assessment materials, when in fact they are seeking production of materials by defendant Rooney.
 
                                                            -2-
 
To the extent the Liberty Insurers are suggesting that they are entitled to learn whether Rooney likely would have accepted some settlement offer before the underlying case went to trial, that too is not relevant. See Metropolitan Prop. and Cas. Ins. Co. v. Choukas, 47 Mass. App. Ct. 196, 200 (1999) (settlement tactics by claimant’s attorney, such as preemptively telling claims adjuster not to bother to make settlement offer that does not exceed some threshold, do “not relieve” insurer of obligation to tender fair settlement offer when insured’s liability is reasonably clear). “An insurer’s statutory duty to make a prompt and fair settlement offer does not depend on the willingness of a claimant to accept such an offer.” Hopkins, 434 Mass. at 567. “Accordingly, quantifying the damages for the injury incurred by the plaintiff as a result of the defendant’s failure under G.L. c. 176D, § 3(9)(f), does not turn on whether the plaintiff can show that she would have taken advantage of an earlier settlement opportunity.” Id.; accord, e.g., Rhodes v. AIG Domestic Claims, Inc., 461 Mass. 486, 495–497 (2012).
Liberty quotes a decision by the Appellate Division of the Massachusetts District Court stating that “the very documents that evidence work product are the documents that are the most central to a bad faith settlement claim,” because they are likely to show “what impressions of liability existed at the time of the settlement discussions prior to suit.” Sanchez, v. Witham, 2003 WL 1880181, at *3 (Mass. Dist. Ct. App. Div. Mar. 31, 2003) (Greco, J.).
Liberty’s reliance on Sanchez is misplaced. That decision concerned a request by the plaintiff in a G.L. c. 176D case for the insurer’s case file, including case evaluations by the insurer’s claim representatives. Id. An insurer’s claim file is relevant in an unfair settlement practice case because it should show what information was known to the insurer at the time it was deciding whether to make a settlement offer and if so for how much. That has nothing to do with the issue here, where the insurer is trying to get access to confidential work product created by the injured plaintiff’s trial counsel when preparing to try the underlying personal injury case.
ORDER
Plaintiffs’ motion to compel production of case assessment materials (docketed twice, as doc. nos. 15 and 22) is denied.